ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

JOSEPH WREN.

1. EVIDENCE — *published laws.* The laws certified by the secretary of State, and published by the authority of the State, must be received as having passed the legislature in the manner required by the Constitution, unless the contrary appears.

2. SAME — *legislative journals.* If parties seek to raise the question as to whether the yeas and nays were duly called upon the passage of an act, it is not sufficient to refer the court to the journal, with the expectation that the court will take judicial notice of all the facts that it discloses.

3. SAME — *of what the court will take judicial notice.* Although the court will take judicial notice of all acts of the legislature signed by the governor, and found in the office of the secretary of State, and although for some purposes the court may take judicial notice of the legislative journals, yet it is not the province of the court, at the suggestion or request of counsel, to undertake to explore the journal for the purpose of ascertaining the manner in which a law duly certified went through the legislature, and into the hands of the governor.

4. SAME — *how published law may be impeached.* If parties desire to show that a law has been passed without calling the yeas and nays, they must make the requisite proof of that fact, by means of the legislative journals, and introduce that proof into the record.

A duly authenticated copy of so much of the original journals as shows the facts relied upon by counsel for impeaching a law *prima facie* valid must be brought before the court through the record.

78        ILLINOIS CENTRAL R. R. Co. *v.* WREN.        [Jan. T.,

Statement of the case.    Opinion of the Court.

5.  NEGLIGENCE.  Gross or willful negligence on the part of a railroad company will make it liable for injury to an animal, even though the animal be improperly on the track.

6.  If an animal is suddenly driven on the track by a dog, and there is no fault on the part of the engineer, the company will not be held responsible.

APPEAL from the Circuit Court of De Witt county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was an action brought by Wren against the Illinois Central Railroad Company, before a justice of the peace, to recover the value of a cow killed by a passing train in the town of Clinton.  The plaintiff recovered a judgment before the justice for fifty dollars, from which the defendant took an appeal to the Circuit Court.  In that court a jury was waived and cause tried by the court, and judgment rendered in favor of the plaintiff for forty-five dollars.  From this judgment the defendant appealed.

The first point raised by the appellant is, that this is an action on the case, and the justice had no jurisdiction, the law of February 9, 1857, conferring jurisdiction on justices of the peace in such cases, not having been passed in a constitutional manner, and the suit should have been dismissed.  In support of this position the appellant referred the court to the journals of the house and senate, to show that the act in question had not passed by ayes and noes, as required by the Constitution. Citing, as authorities, *Spangler* v. *Jacobi*, 14 Ill. 299, and *Supervisors of Schuyler Co.* v. *People, ex rel. R. I. & Alton R. R. Co.*, 25 id. 181.

Mr. C. H. MOORE, for the appellant.

Mr. E. H. PALMER, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action brought by Wren against the railroad company to recover the value of a cow killed by a passing train, in the town of Clinton.  The suit was originally commenced

before a justice and taken by appeal to the Circuit Court, where a jury was waived and the court gave the plaintiff judgment for forty-five dollars.

It is first objected, on behalf of the appellant, that the act of 1857, giving justices of the peace jurisdiction in actions on the case, was not passed by yeas and nays as required by the Constitution, and therefore never became a law. In support of this we are referred to various pages of the printed journal of the house and senate, by which it is sought to trace the facts connected with the passage of the act. The laws certified by the secretary of State, and published by the authority of the State, must be received as having passed the legislature in the manner required by the Constitution unless the contrary clearly appears. If counsel seek to raise the question as to whether the yeas and nays were duly called, it is not sufficient to refer the court to the journal, with the expectation that we are to take judicial notice of all the facts that it discloses. Although we take judicial notice of all acts of the legislature signed by the governor, and found in the office of the secretary of State, and although for some purposes we may take judicial notice of the legislative journals, yet it is not our province, at the suggestion or request of counsel, to undertake to explore these journals for the purpose of ascertaining the manner in which a law duly certified went through the legislature and into the hands of the governor. If counsel say the journal shows a law to have been passed without calling the yeas and nays, let them make the requisite proof of that fact by means of the legislative journals, and introduce that proof into the record. In the present case we have been referred to the printed journal. We are not aware of any law which makes the printed journal evidence of the contents of the original. But even if it were it is not sufficient to refer us to it. A duly authenticated copy of so much of the original journal as shows the facts relied upon by counsel for impeaching a law *prima facie* valid, must be brought before us through the record. In *Spangler* v. *Jacobi*, 14 Ill. 299, the journals were made a part of the bill of exceptions, and in every case that has hitherto come before this

court, in which questions of this character have been raised, the facts have been presented by the record.

As to the merits of the case before us, a witness called for the plaintiff swears he was standing in the door of a barn watching the approaching train; that he distinctly saw the cow standing still upon the track; that she was in full view of the engineer from the time the train emerged from a cut until it struck the cow, a distance of two or three hundred yards, and that the speed of the train was not slackened. The engineer was sworn, and admits the speed was not slackened, but says the cow was not on the track when he emerged from the cut, but was afterward driven on it by a dog, and so near to the locomotive that he could not avoid running over her. There was a third witness called, but he was not in a position where he could see the cow. The engineer says he was running at about eight or ten miles per hour. If, running at this speed, with a cow in full view, standing on the track, while the train was going two hundred yards, he deliberately ran over her without any attempt to check the speed of his train, which in that distance might so easily have been done, it was gross and willful negligence, for which the company must be held responsible. This court has constantly held, from the *Patchin case,* 16 Ill. 198, to the present time, that gross or willful negligence on the part of the road, will make it liable for injury to an animal, even though the animal be improperly on the track. If, on the other hand, in the case before us, the cow was suddenly driven on the track by a dog, and there was no fault on the part of the engineer, the company would not be responsible. But on this point the two witnesses differ, and there is no ground for saying the court gave credence to the less credible of the two. The plaintiff's witness was disinterested and testified clearly and positively. The judgment must be affirmed.

*Judgment affirmed.*