# MICHAEL GROB

## *v.*

# WILLIAM H. W. CUSHMAN.

1. EVIDENCE — *of what courts will take judicial notice — legislative journals.* Courts will not take judicial notice of the contents of the journals of the legislature.

2. When the legislative journals are relied on, they must be brought before the courts as evidence. But when offered they prove their own authenticity.

3. CHANCERY — *defaults.* The defendant to a bill must appear at the return day and interpose his defense ; if he fails to do so, the bill may be taken *pro confesso* against him.

4. DEFAULTS — *practice.* There is no known rule of practice which requires a rule to answer *instanter* before a decree *pro confesso* can be taken.

5. PRACTICE — *evidence in chancery — reference to master.* A case may be referred to a master to hear and report evidence after the issues are formed. Either party can introduce before him such evidence as he may choose.

6. In chancery cases parties may take evidence before the master, or by depositions, or they may introduce oral testimony on the hearing. Either or all these modes may be resorted to.

7. The granting of leave to answer after a decree *pro confesso,* order of reference to a master and a report of evidence, does not affect the order of reference or the evidence taken under it.

8. CHANCERY — *decree must be sustained by proof.* The proof upon which a decree is rendered must appear in the record in some manner, or the decree must find the facts to have been proved, unless the same are admitted in the answer.

9. REDEMPTION — *right of subsequent incumbrancers.* Where a purchaser under a decree of foreclosure bids more than the amount actually due on the decree, and costs, for the purpose of defrauding a judgment creditor, having a junior lien, the latter, upon showing the fraud, will be entitled to redeem by paying the same sum as if the mortgaged premises had sold for the amount of the decree and costs.

WRIT OF ERROR to the La Salle County Court.

This was a bill in chancery filed in the County Court of La Salle county, by Cushman against Michael Grob and others. The bill alleges, that one Michael Minehard was the owner of certain lands in La Salle county, subject to a mortgage of

$1,400, to one Wylie, dated in 1861; that in October, 1864, one Wm. H. Robinson recovered a judgment against Minehard for $1,000, in the Circuit Court of said La Salle county, upon which execution was duly issued and levied upon the premises described, and the land sold on the 3d of December, 1864, subject to said mortgage, to George H. Rugg, for $650; that on the 1st of January, 1865, the certificate of purchase was assigned to the complainant.

That on the 9th day of December, 1865, Wylie obtained a decree of foreclosure upon his mortgage, and that the premises were sold under the decree, on the 3d day of January, 1866, and bid off by one Crooker, who was attorney for Wylie, for the sum of $2,600, and that no money was paid at the sale; that Crooker afterward, as the attorney for Wylie, receipted for the amount of the decree, interest and costs, $1,655.74, as having been paid by Michael Grob, the plaintiff in error, and for the balance presented the receipt of Hough, attorney for Minehard, for $944.26, as having been paid by Grob, and induced the master in chancery to issue a certificate of purchase to said Grob, reciting that the premises had been sold to him for $2,600; that $2,600 is the full value of the land; that Hough & Crooker were Minehard's attorneys in the suit brought against him by Robinson; that Grob was Minehard's son-in-law.

The bill further alleges, that, in point of fact, Minehard never received the $944.26, and that, long after the sale, Wyle received from Grob the amount of the decree, and that no other or greater amount was ever paid by Grob, or any one for him, on the purchase, but that Grob fraudulently claimed to have paid the whole $2,600 upon the purchase; and alleges that the whole thing was a conspiracy to cheat and defraud the owner of the judgment.

The bill further alleges, that, on the 1st day of January, 1867, two days before the expiration of twelve months from the day of sale, the complainant tendered to Grob, who still held the certificate of purchase, the sum of $1,665.75, with interest at the rate of ten per cent from date of sale. That

Grob declined to receive the money and surrender the certificate unless the complainant should pay him $2,600 with ten per cent interest from date of sale.

That the complainant, on the 21st of February, 1867, received from the sheriff of La Salle county a deed for said premises, the same not having been redeemed from the sale on Robinson's judgment; and that the complainant now owns the same, subject to the amount equitably due on the certificate held by Grob, on the foreclosure sale, which is only said sum of $1,655.74, together with interest thereon, from the date of sale to the date of tender.

The bill further alleges, that the complainant was also, at the time of the tender to Grob, the owner of the unpaid balance of the Robinson judgment, over and above the amount made on the execution, and as judgment creditor, he did, on the 19th day of February, 1867, and before the expiration of fifteen months from the sale to Grob, tender to Grob the sum of $1,843.02, being the $1,655.74, and ten per cent interest thereon from the date of sale, and that Grob wholly refused to receive the same.

The complainant asks to be allowed to redeem by paying $1,655.74 and interest. Oath of defendants was waived. Summons was issued, returnable to the March Term, 1867, and was duly served.

The defendants not appearing, a rule was entered requiring them to answer instanter, and a decree *pro confesso* taken. The cause was referred to the master in chancery to take proof. The master made report. After the filing of the report, at the same term, the defendants appeared and entered a motion to set aside the default, which was allowed, and the answers of Grob, Crooker and Minehard were filed, but not under oath, their oaths being waived. The answers denied all the material allegations of the bill relating to the matters in controversy.

The complainant dismissed the bill as to Crooker, and filed a replication to the answers of Grob and Minehard.

After the issues were formed, the cause was referred to a special master to take further proof, and to report at the next

term. Each party was given leave to examine the opposite party before the special master, upon ten days' notice.

At the June Term, 1867, the special master filed his report, that he had, at the instance of the complainant, notified the defendants, and D. L. Hough, by subpœna, to appear and testify, but they failed to appear.

The first report of the special master gives the evidence of Benjamin F. Shotwell, who testified as follows: I know all the defendants; on the 3d of January, 1867, the complainant gave me $1,821.31, with instructions to look up and find out who had bid off the premises in controversy; I found that it had been bid off by James C. Crooker, attorney for Allen Wylie; I called upon Wylie and asked him if he had bid off the land; he said Crocker had bid it off for him; I asked if he still held the certificate of purchase; he said no, that it was in the hands of Jabez C. Crooker, and that some time in the month of August, 1866, some man came to him from Crooker, stating that the amount due him (said Wylie) had been paid, and that the amount then paid was about $1,800; I then asked him the name of the person who paid him the money; he said he did not recollect, but thought he was the son-in-law; here he hesitated for some time, and then said he thought it was Schermerhorne, and that he lived near Mendota; I then asked him if he still had an interest in the certificate of purchase; he said no; I then called at Crooker's office; he was not at home; a young man in the office, Lucien B. Crooker, informed me that he thought Michael Grob owned the land; he went with and introduced me to Grob; I asked Mr. Grob if he owned the land; he said that he did; I asked him if he held the certificates of purchase; he answered and said that Mr. Crooker held them; I asked him if they belonged to Mr. Crooker; he said no, they belonged to him; I then asked him if Mr. Crooker was holding them for him, and he said yes; I told him I had some money to make him a tender for Mr. W. H. W. Cushman, and did make him a tender of $1,821.31; I read to him the description of the land and stated to him the amount due on the decree and foreclosure of the Wylie mortgage, with the

amount of costs and interest to that date; he refused to take
the money I tendered him; I told him the money would be
held safe at his order at Mr. Cushman's office, in Ottawa; I
then told Grob the substance of my conversation with Wylie,
and asked him if he was the man who purchased the certificate
of purchase from Wylie in July or August, A. D. 1866; he
said he was; I asked him how much money he paid Wylie; he
said $1,700 or $1,800; I called in the latter part of January,
1867, on Michael Minehard, and had a conversation in reference
to the matter; he said Mr. Grob was a son-in-law, and lived
at Mendota, and worked in shoe shop; he (Minehard) had
never received a cent of money on this sale from any body; I
then asked him if Mr. D. L. Hough had not paid him $900 on
the sale; he said not one cent; about the 20th of February,
A. D. 1867, I made a tender in the office of Jabez C. Crooker
of the amount of $1,843.21, on account of Wm. H. W. Cush-
man, assignee of judgment against Michael Minehard; Mr.
Jabez C. Crooker was absent; Lucien B. Crooker was present;
he declined to receive the money; I then called upon Michael
Grob, asked him if he was then the owner of the land and read
him the description; he said he was; I asked him if he still
owned the certificate of purchase given under the decree of
sale on Wylie's mortgage; he said he was; I then made him a
tender of $1,843.21, for Cushman, the complainant, assignee of
judgment against Michael Minehard; I stated to him where
the judgment was, the amount, when given, and all about it;
he refused to receive the money; I told him the money would
be held subject to his order at the office of Wm. H. W. Cush-
man, in Ottawa, Illinois; I made the same statements to each
of the persons to whom I made the tender, as hereinbefore
stated; this is all I remember now in the matter.

The master further reported, that, from the evidence, he
found the amount due on the certificate of purchase to be
$1,555.74, with interest from the date of sale, January 3, 1866.

This was all the evidence in the case.

The cause came on for hearing at the June Term, 1867,
upon the bill, answers, replication and reports of special

master, and a decree was rendered allowing the complainants to redeem, upon paying the sum of $1,821.31, within sixty days, and requiring Grob to surrender certificate of purchase, or give certificate of redemption. Grob brought the case to this court by writ of error.

Messrs. D. L. HOUGH and G. S. ELDRIDGE, for the plaintiff in error.

Messrs. J. O. GLOVER and GEORGE C. CAMPBELL, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is first insisted that the La Salle County Court did not have jurisdiction of the subject matter of this cause; that the act of the legislature under which jurisdiction was claimed, never became a law in the mode prescribed by the Constitution. And counsel in their argument refer to the journals of the house in support of the position. On the trial below no evidence from the journals was introduced. But it is now urged, that, as they are public records, this court will take judicial notice of them, and not require them to be embodied in the evidence. It is true, that they are public records, but it does not follow that they will be regarded as within the knowledge of the courts like public laws. Like other records and public documents, they should be brought before the courts as evidence. But when offered they prove their own authenticity. Until so produced they cannot be regarded by the courts. This is the rule anounced in the case of *Illinois Central Railroad Company* v. *Wren,* 43 Ill. 77.

It is insisted, that the court below erred in ruling that appellants answer instanter, and for failing to do so in entering a decree *pro confesso.* We have been referred to no law or rule of practice, nor are we aware of any, which requires the court to enter such a rule. It is the duty of a defendant to a bill, to appear at the time he is required by the summons, and to interpose his defense, and, failing to do so, he is in default, and the bill may be taken *pro confesso* against him. If he desires

further time than the ten days allowed by law, after the service to prepare his defense, he should apply to the court for further time, and if he makes no defense, the practice warrants a decree *pro confesso* on the return day of the summons if the service is sufficient.

It is again urged, that the court below erred in referring the case to the master after the issues were formed, to hear and report the evidence. In this nothing irregular is perceived. Under the reference, either party could introduce before him such evidence as he might choose, or they might take depositions of witnesses, or introduce oral evidence on the hearing, unless it be in cases of a reference to state an account, when all of the evidence should be brought before the master; but, on the hearing before him, it may be by deposition, documentary or oral evidence, or either, or all of these modes may be resorted to in stating the account. In this, then, there was no error.

On the coming in of the master's report, appellants came into court, and, on affidavits of merits, obtained leave and filed answers, to which replications were interposed, and the case was again referred to the master to take proof, and to report to the court. At the next term of the court, the master reported that he had issued a subpœna for each of the defendants and D. L. Hough, to appear before him, and give evidence in the case, but that they failed to appear, or to obey the subpœna. He reported no additional evidence. Thereupon, the court, on a final hearing, rendered a decree, so far as the record shows, on no other evidence than the admissions of the answer and the first report of the master. This action of the court is assigned for error.

It is urged, that, when the defendants below obtained leave to answer, it operated to vacate, not only the *pro confesso* decree, but also the reference to the master and his report of the evidence previously taken by him. This latter proposition we think is not true. Had depositions been properly taken and read on the hearing, a decree based upon them been rendered, and subsequently set aside and vacated, it would not in the slightest degree have affected the depositions. They could,

if otherwise legal, have been read on any subsequent trial. So in this case, when the bill was taken as confessed, the court below might have rendered a decree and granted the relief upon the *pro confesso* order without other or further proof. But, being anxious to preserve any and all rights which either of the defendants might have, the court, as he had the unquestioned right to do, referred the case to the master to hear and report the evidence in support of the truth of the allegations of the bill, before rendering a decree. It then follows, that the evidence thus taken, reduced to writing and reported to the court by the master, was as legal and as much testimony as if the depositions had been taken, under the statute, before any authorized officer.

The question then is presented, whether the admissions in the answer, and the evidence reported by the master, sustain the allegations in the bill. While the answer is not under oath, still, the bill must be proved, or the decree can not be sustained, and the proof must appear in the record in some manner, or the decree must find the facts to have been proved. The answer does not admit the recovery of the judgment by Robinson against Minehard, the issuing of execution or the sale of the mortgaged premises thereunder to Rugg by the sheriff, and the assignment of the certificate of purchase by Rugg to defendant in error. These allegations lie at the foundation of complainant's claim to equitable relief. If he was not a judgment creditor, having a lien on the land, or occupied the relation of such a creditor, he had no right to redeem from the sale, under the decree of foreclosure of Wylie's prior mortgage. He claimed in his bill, that, he having a judgment lien, or, rather, having purchased under a judgment which was a junior lien to the mortgage on the lands in controversy, acquired before the foreclosure was had, to which he was not a party, he had the equitable right to redeem, by paying the amount of the decree of foreclosure with interest and costs, inasmuch as the sale for more than the value of the land was certainly in fraud of his right of redemption. And, the land having been thus sold for $1,000 more than that sum, he could not redeem by paying the

master the amount of the decree with interest and costs, but was authorized to pay it to the holder of the certificate of purchase under the decree. It was therefore essential, to obtain the relief, that he should have proved these allegations. But we find nothing in the record to establish their truth, or sustaining the charge of fraud.

Defendant in error holding by assignment this junior lien of a judgment creditor, which had attached to the mortgaged premises before the foreclosure suit was commenced, the decree and sale did not deprive him from redeeming from the sale under the decree. And, if the arrangement by which Grob paid $1,000 more than the amount of the decree and costs was fraudulent, that could not deprive defendant in error of the right to redeem by paying the same sum of money he would have been required to do had it been sold for the amount of the decree and costs. If the fraud should be established, then defendant in error would show himself entitled to redeem on those terms. But in this case there is no evidence of the fraud charged in the bill. Defendant in error, having placed his right to redeem for that sum upon the ground of fraud in Grob and the mortgagor and mortgagee, to produce a sale nominally for more than the decree and the worth of the land, to prevent him from redeeming, he should be held to the proof of the allegation. The fraud is denied by the answer, and there is no evidence to establish it in this record.

The allegations of the bill not admitted by the answer must be proved. The failure of plaintiffs in error to obey the subpœna issued by the master, did not in any degree change the necessity for proof in the case. The cause was at issue, and it devolved upon complainant to establish his case by proofs. Their failing to appear and testify before the master did not amount to a confession that the allegations of the bill were true, or lessen the quantum of the evidence necessary to establish their truth.

We do not see any force in the objection urged, that a bill will only lie in the court in which the decree was rendered foreclosing the mortgage. Defendant in error was not made a

party to that suit, and, claiming rights in no wise growing out of that proceeding, we are unable to perceive why any court of equity having jurisdiction may not entertain the bill. The parties are not the same, the right sought to be enforced is different, and hence no necessity is perceived for confining the jurisdiction alone to the Circuit Court. Had the parties holding the lien under the judgment been made parties to the bill to foreclose, as they should have been, then a different question might have been presented.

For the errors above indicated, the decree of the court below must be reversed and the cause remanded for further proceedings.

*Decree reversed.*