BATE REFRIGERATING Co. *v.* GILLETT and others.

(*Circuit Court, D. New Jersey.*   August 4, 1882.)

1. PATENTS FOR INVENTIONS—FOREIGN PATENT PREVIOUSLY GRANTED—REV. ST. § 4887.

Section 4887 of the Revised Statutes expressly requires the commissioner of patents, where a foreign patent has been issued for the same subject-matters, to limit the term of the domestic patent to the period of time that the foreign patent has to run; or if there be more than one, then to make it expire at the same time with the one having the shortest term; and the priority of such patent is to be determined, not by the dates of the applications for the foreign and domestic patents, but by the dates on which the letters patent were granted.

2. SAME—CANADIAN PATENT ACT.

Under sections 16 and 18 of the Canadian patent act, a patent takes effect not from its delivery to the patentee, but when it is signed, sealed, and registered.

3. SAME—EXTENSION OF FOREIGN PATENT.

An extension of the term of a foreign patent will not operate to extend the term of the domestic patent; such patent expires when the original foreign patent expires.

4. SAME—VALIDITY OF DOMESTIC PATENT.

Whether the United States patent is void *ab initio* in this case, because the term was not limited on its face to expire with that of the foreign patent. not decided.

On Petition to Dissolve Injunction.

*Dickerson & Dickerson*, for complainant.

*George Harding* and *John R. Bennett*, for defendants.

NIXON, D. J.   On the fourteenth of November, 1881, a decree was entered in the above case, sustaining the validity of complainant's letters patent, and ordering an account and an injunction against the defendants, restraining them from further infringement.

The defendants now file a petition setting forth that the letters patent, for the infringement of which the suit was brought, were the letters patent of the United States, numbered 197,314, granted to John J. Bate, of the city of Brooklyn, New York, on the twentieth of November, 1877, for the term of 17 years from that date, for "improvements in the process for preserving meats during transportation and storage;" that prior thereto, to-wit, on the ninth of January, 1877, letters patent of the dominion of Canada, No. 6,938, were granted to the said Bate for the same invention or discovery, for the term of five years from January 9, 1877; that the said term for the foreign patent expired on the ninth of January, 1882, by reason whereof the letters patent of the United States, No. 197,314, expired

at the same time as the said Canadian letters patent, as provided for by section 4887 of the Revised Statutes.

The petition further alleges that the invention or discovery of Bate having previously been patented by him in the dominion of Canada, the said letters patent of the United States should have been so limited as to expire with the same time as the foreign Canadian patent, and that the granting of the patent in the United States for the term of 17 years from the twentieth of November, 1877, was in direct violation of section 4887 of the Revised Statutes, by reason whereof the same were and are null and void. The prayer of the petition is that the injunction heretofore ordered and issued may be dissolved.

Are either of these reasons sufficient to justify the court in recalling the injunction?

The affidavits used at the hearing of the motion disclosed the following facts: The inventor, Bate, filed an application for United States letters patent on the first of December, 1876. Before any action was taken by the office in Washington, to-wit, on the nineteenth day of the same month and year, he caused a like application to be filed in the department of agriculture at Ottawa, in the dominion of Canada, on which letters patent were granted, the certificate of which was dated January 11, 1877.

But the fifteenth section of the Canadian patent act, in force when the patent was issued to Bate, provides—

"That an applicant shall also deliver to the commissioner, unless specially dispensed from so doing for some good reason, a neat working model of his invention, on a convenient scale, exhibiting its several parts in due proportion, whenever the invention admits of such model."

In this case the model was not dispensed with, but was required, and notice was sent to the solicitor of the inventor that the patent was withheld until it was furnished. It was not forwarded until the eighteenth of June, 1878, when the model reached the patent-office in Canada, and on the twenty-sixth of the same month the letters patent were mailed to the solicitor. In the mean time the United States office had granted letters patent for 17 years for the same invention, which bear date at the time of their issue, to-wit, November 20, 1877.

The case obviously turns upon the question whether the invention was patented in Canada previous to the issuing of the patent in the United States, in the sense in which the word *patented* is used in sec.

tion 4887 of the Revised Statutes—the limitation of the statute being applicable only in such a case.

The provisions of the section are as follows:

"No person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid by reason of its having been first patented, or caused to be patented, in a foreign country, unless the same has been introduced into public use in the United States for more than two years prior to the application. But every patent granted for an invention which has been previously patented in a foreign country, shall be so limited as to expire at the same time with the foreign patent; or, if there be more than one, at the same time with the one having the shortest term; and in no case shall it be in force more than 17 years."

The phraseology here used materially differs from the previous legislation on the subject. The power of the commissioner of patents is defined and abridged. Where a foreign patent has been granted for the same subject-matter, he is expressly required to limit the term of the domestic patent to the period of time that the foreign patent has to run; or, if there be more than one, then to make it expire at the same time with the one having the shortest term. We do not see how any language could have been employed that would more clearly express the legislative design that the life of the domestic patent should expire with the term of any outstanding foreign patent.

But the counsel for the complainant contended on the argument that the present case did not fall within the limitation of the statute, because the application for the United States patent was filed antecedent to the application for or the grant of the Canadian patent. We are at a loss to understand what the time of filing the application for the patent has to do with the matter. It is true that the eighth section of the act of 1836, and the sixth section of the act of 1839, made the date of filing the specifications, and drawings in the one case, and the date of the application for the home patent in the other, the point of time from which to reckon the six months intervening between the issue of the foreign and domestic patent. It is also true that by section 4886, and the first clause of section 4887, of the Revised Statutes, an inventor is required to file an application for his patent within two years after his invention or discovery has been in public use or on sale, from all of which the late commissioner of patents (Payne) was led to the opinion that the word "previously" used in the last clause of section 4887 had reference to time prior to the filing of the application, rather than to time prior to the

granting of the patent. See 17 O. G. 330. But this seems to be wresting the language of the section from its plain and obvious meaning, and we are not able to follow the reasoning by which such an interpretation is reached.

It was further insisted that the grant of the Canadian patent was to be determined, not by its date or issue, but by the time of its delivery to the patentee; that although dated January 9, and issued January 11, 1877, it was not delivered until June 26, 1878, a long time after the date of the American patent. Hence, it was said, "the invention had not been previously patented in a foreign country" when the patent was granted here. But this position will not stand the test of analysis or examination. It appears upon the face of the Canadian patent that it was granted and dated on the ninth and issued on the eleventh of January, 1877, and was to continue in force for five years from its date. By the eighteenth section of the Canadian patent act it is provided that—

"Every patent and instrument for the extension of time, as aforesaid, shall, before it is signed by the commissioner, or any other member of the privy council, and before the seal hereinbefore mentioned is affixed to it, be examined by the minister of justice, who, if he finds it conformable to law, shall certify accordingly, and such patent or instrument may then be signed and the seal affixed thereto, and, being duly registered, shall avail to the grantee thereof."

The invention is patented so as to be available to the patentee when signed, sealed, and registered. Owing to the neglect of the inventor in not forwarding a model to the office, it was not delivered to him until June, 1878, but it was no less a patent, securing to him the benefits of the invention and protecting him against infringement. This becomes manifest by referring to section 16 of the act, wherein it is enacted that "the patentee shall have the exclusive right, privilege, and liberty of making, constructing, and using, and vending to others to use, the said invention for the period mentioned *from the granting of the same.* Again, the proofs of the complainant show that the patent was absolutely granted as early as January, 1877, although the delivery was withheld owing to the laches of the grantee. The certificate of the assistant patent clerk of the Canadian office, the affidavit of Mr. Simpson, the solicitor employed by Mr. Bate to procure the letters patent, and the notice sent by the deputy commissioner, all reveal upon their face that the requirements of the Canadian law had been fully met, and that the invention had been in fact patented before the model was required.

It was further maintained by the learned counsel of the complainant that even if it were conceded that the American patent should be construed to terminate with the Canadian patent, the extension of the latter under the provisions of the act operated to lengthen the term of the domestic patent to the period of 15 years from the date of the first issue of the foreign patent.   The seventeenth section of the Canadian law enacts that—

"Patents of invention issued by the patent-office shall be valid for a period of five, ten, or fifteen years, at the option of the applicant; but at or before the expiration of the said five or ten years, the holder thereof may obtain an extension of the patent for another period of five years, and after those second five years may again obtain a further extension for another period of five years, not in any case to exceed a total period of fifteen years in all."

By virtue of these provisions the inventor, Bate, exercised his option, and first took out letters patent for five years.   He afterwards procured extensions : first, on December 12, 1881, for five years from January 9, 1882; and, secondly, on December 13, 1881, for another five years, to be computed from the expiration of the prior extension, to-wit, from January 9, 1887.

What effect had these extensions on the life of the United States patent?   Under the provisions of section 4887, must its terms be made to expire with the term of the foreign patent in force when the letters patent were granted, or do these extensions of the foreign patent save the domestic patent from lapsing when the term ends which was running at the grant of the domestic patent?

The question is an interesting one, and has already received examination and answer in other circuits.   It first came before the late Justice Clifford; in the first circuit, in the case of *Henry* v. *Providence Tool Co.,* decided in 1878, and reported in 14 O. G. 855.   In that case the United States patent had been issued under the act of July 8, 1870, for the full term of 17 years, although at the time of the grant there was an English patent for the same invention in force, which had been granted to the patentee in Great Britain for 14 years from the fifteenth of November, 1860.   The defendants claimed that the United States patent expired, by operation of law, at the same time with the English patent.   The complainant, on the other hand, insisted that the language of the statute extended not only to the term of the foreign patent in force when the United States patent was obtained, but also to the term of any prolongation which the patentee might secure from the foreign government; and that, as he had obtained an extension of four years to the original term, the

owners of the domestic patent were entitled to add these four years to its life.

Judge Clifford refused to accede to such a construction of the law, but, on the contrary, held (1) that by the provisions of the act of July 8, 1870, congress never intended to extend the term of the domestic patent beyond the legal term secured to the foreign patentee when the domestic patent was granted; (2) that the prolongation of the English patent for a further term, after the expiration of the original, did not save the domestic patent from lapsing, under the statute. He was followed, in this construction of the section, by Judge Blatchford, of the second circuit, in 1879, in the case of *Reissner* v. *Sharp*, 16 Blatchf. 383. A patent had been granted by the United States, on the twentieth of October, 1874, for 17 years from that date. It appeared that, under the authority of the patentee, letters patent had been previously obtained in Canada, for the same invention, for five years from May 15, 1873. After careful consideration, the learned judge held that the United States patent expired on the fifteenth of May, 1878, although it appeared that in March, 1878, the Canadian patent had been extended for five years from May 15, 1878, and also for five years from the fifteenth of May, 1883.

There was an attempt made to distinguish the case from *Henry* v. *Providence Tool Co.*, *supra*, (1) because the Canadian patent had not expired when the extension was granted; and (2) because the extension, by the terms of the Canadian law, was not a matter of favor, as it was under the English act. But the judge could not perceive that these considerations were of sufficient force to cause any other conclusion as to the plain meaning of the statute than that arrived at by Mr. Justice Clifford.

We are clearly of the opinion that the prayer of the petition should be granted and the injunction be dissolved. Whether the complainants' United States patent is void *ab initio*, because the term was not limited on its face to expire with the same time as the foreign patent, is not properly before the court on this motion. It was a defense to the suit, of which the defendants did not choose to avail themselves, and a formal interlocutory decree entered in the case cannot be impeached in and by any such collateral proceeding.

## Equity—Remedies—Conversion of Public Property into Corporate Stock.

NEW ORLEANS *v.* MORRIS, U. S. Sup. Ct., Oct. Term, 1882. Appeal from the circuit court of the United States for the district of Louisiana. The opinion of the supreme court was delivered by Mr. Justice *Miller*, reversing the decree of the circuit court, with directions to overrule the plea and for further proceedings:

The first point raised in argument here which requires our attention is that, whether the court below was right or wrong in its decision of the case on its merits, the bill must still be dismissed for want of equity, on the ground that there is ample remedy at law by a motion to the court to compel the marshal to release his levy on the stock, because not liable to be sold on the execution. It will be observed that no such objection was made to the bill in the court below, and although one of the defendants filed a general demurrer to the bill which might have raised it, he afterwards withdrew his demurrer, and joined in the plea on which the case was decided. This plea was a defense on the merits of the case, and was to be held good or bad on precisely the same principles whether pleaded to a declaration at law or a bill in chancery. We should under such circumstances have great hesitation to permit the party who had, by tendering this issue, waived the question of the special jurisdiction of the court in equity, to raise that point for the first time on appeal. Notwithstanding, that in the ordinary case of a wrongful levy of an execution on property not subject to be seized under it, the proper remedy is by motion to the court to have the levy discharged, we think that this bill shows other sufficient grounds for the equitable jurisdiction of the court. A statute of a state legislature which, in the act authorizing a city to convert its ownership of a large and valuable property, held for the use of the public, into the shares of a joint-stock corporation, declares that these shares shall be exempt from judicial sale for the debts of the city, is an impairment of the obligation of existing contracts within the meaning of the constitution. City water-works are held for public use, and are not liable to execution for judgments against the city.

Cases cited in the opinion: Van Norden v. Morton, 99 U. S. 378; Green v. Biddle, 8 Wheat. 1; Bronson v. Kinzie, 1 How. 311; McCracken v. Hayward, 2 How. 608.

## Legislation—State Statute—Judicial Question.

AMOSKEAG NAT. BANK *v.* TOWN OF OTTAWA; POST *v.* KENDALL CO.; U. S. Sup. Ct., Oct. Term, 1881. In error to the circuit court of the United States for the northern district of Illinois. The decision of the supreme court was rendered on May 8, 1882. Mr. Justice *Gray* delivered the opinion of the court affirming the judgment.

Where the facts of the case do not essentially differ from a case which was before this court at a prior term, the principles therein affirmed must control the decision: *First.* By the law of the state of Illinois, as often declared by the supreme court of that state, before as well as after the execution of the bonds in suit, the provisions of the constitution of 1848, requiring each house of the legislature to keep and publish a journal of its proceedings, and, on the

final passage of all bills, to take the vote by ayes and noes, and ordaining that no bill shall become a law without the concurrence of a majority of all the members elect of each house, are not merely directory; but if the journals, being produced or proved, fail to show that an act has been passed in the mode prescribed by the constitution, the presumption of its validity, arising from the signatures of the presiding officer and of the executive, is overthrown, and the act is void. *Second.* Whether a seeming act of the legislature is or is not a law is a judicial question to be determined by the court, and not a question of fact to be tried by a jury. *Third.* The construction uniformly given by the constitution of a state by its highest court is binding on the courts of the United States as a rule of decision. *Fourth.* An act of the legislature of a state, which has been held by its highest court not to be a statute of the state, because never passed as its constitution requires, cannot be held by the courts of the United States, upon the same evidence, to be a law of the state. *Fifth.* That which is not a law can give no validity to bonds purporting to be issued under it, even in the hands of those who take them for value, and in the belief that they have been lawfully issued.

It was accordingly held that the act of the general assembly of Illinois, under which the bonds in suit were issued, having been adjudged by the supreme court of that state, upon proof that the journal did not show it to have been enacted in conformity with the requirements of the constitution, to have never become a law, and to have conferred no power, although referred to in later statutes as an existing law, those decisions must govern the action of the courts of the United States. The copies of the journals, certified by the secretary of state, and the printed journals, published in obedience to law, are both competent evidence of the proceedings in the legislature. For these reasons the act of February, 1857, under which all the bonds in suit purport to have been issued, must be held to be of no force or effect, and the plaintiffs can maintain no action on the bonds.

Cases cited in the opinion: Ryan v. Lynch, 68 Ill. 160; Miller v. Goodwin, 70 Ill. 659; Elmwood v. Marcy, 92 U. S. 283; East Oakland v. Skinner, 94 U. S. 255; Dunnovan v. Green, 57 Ill. 63; Force v. Batavia, 61 Ill. 99; Illinois Cent. R. Co. v. Wren, 43 Ill. 77; Bedard v. Hall, 44 Ill. 91; Grob v. Cushman, 45 Ill. 119; People v. De Wolf, 62 Ill. 253; Benz v. Weber, 81 Ill. 288; People v. Cambell, 3 Gilman, 466; Prescott v. Trustees, etc., 19 Ill. 324; Happel v. Brethauer, 70 Ill. 166; Watkins v. Holman, 16 Pet. 25; Bryan v. Forsyth, 19 How. 334; Gregg v. Forsyth, 24 How. 179.