W. S. CANTRELL *et al.* Railroad and Warehouse Comrs.

*v.*

GEORGE A. SEAVERNS.*

*Opinion filed November 1, 1897.*

1. COURTS—*order of passage of legislative acts not a subject of judicial notice.* Courts will not take judicial notice of the order in which bills are actually passed by the legislature at the same session.

2. STATUTES—*rule of construction of acts of same legislature.* Where it is clear that the legislature intended a particular provision of an act to operate as an exception to a general power conferred by a prior act passed at the same session, such intention must govern.

3. WAREHOUSES—*the warehouse commissioners cannot revoke class A licenses.* Section 3 of the act of 1871, to regulate public warehouses, (Rev. Stat. 1874, p. 820,) confers upon the local circuit court exclusive jurisdiction to issue and revoke licenses to class A warehouses, and the railroad and warehouse commissioners have no power, under section 12 of the act of 1871 creating the commission, (Rev. Stat. 1874, p. 831,) to revoke or cancel such licenses.

*Cantrell* v. *Seaverns,* 64 Ill. App. 273, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

HENRY S. ROBBINS, for appellants:

Acts passed at the same session, being *in pari materia,* are to be construed together, so that every part of both may stand together and harmonize and the provisions of each have a sensible and intelligent effect. *Young* v. *Stearns,* 91 Ill. 221; *Bank* v. *Byram,* 131 id. 92.

Repeals by implication are not favored, and both statutes must stand unless it plainly appears that the later

*The cases of *Railroad and Warehouse Commissioners* v. *South Chicago Elevator Co.,* Same v. *Chicago Elevator Co.,* Same v. *Central Elevator Co.,* Same v. *Sante Fe Elevator and Dock Co.,* Same v. *Edson Keith,* and Same v. *Chicago and Pacific Elevator Co.,* involving the same questions, have been considered with above case and are disposed of in this opinion.

was intended to be a complete substitute for the earlier one. *Commonwealth* v. *Huntley*, 156 Mass. 236.

Where two acts are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication. *Hyde Park* v. *Cemetery Co.* 119 Ill. 147.

The repealing of a statute by implication is never permitted if it can be avoided on any reasonable hypothesis. *Butz* v. *Kerr*, 123 Ill. 659.

*Quasi* judicial power may be safely, and sometimes with extreme propriety, vested in two tribunals. *Korah* v. *Ottawa*, 32 Ill. 121; *Tugman* v. *Chicago*, 78 id. 405; *People* v. *Canty*, 55 id. 33.

In the case of ministerial' or administrative powers, whether a statute conferring such power upon one person is a repeal of a prior statute conferring a like power upon another, must depend upon whether the power is such as can be concurrently exercised by two different officers. *Chicago* v. *Quimby*, 38 Ill. 274.

J. R. CUSTER, and JAMES E. MUNROE, for appellees:

Where two acts come into operation on the same day, and are repugnant, the one last approved repeals the other. *Rey* v. *Middlesex*, 2 B. & A. 318.

Specific provisions relating to a particular subject must govern in respect to that subject, as against general provisions in other parts of the law which might otherwise be broad enough to include it. *Felt* v. *Felt*, 19 Wis. 193.

A subsequent statute revising the subject matter of a former one, and evidently intended as a substitute for it, though it contains no express words to that effect, must operate as a repeal of the former law. *Herron* v. *Carson*, 26 W. Va. 62.

The power to revoke or cancel a license is usually vested in the source from which the license issues. Black on Intoxicating Liquors, sec. 191.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

These seven cases, involving the same questions, have been considered together and are all disposed of in this opinion. They are appeals in actions by common law writs of *certiorari*, in each of which the proceedings of the railroad and warehouse commission in the cancellation of the warehouse licenses of the several defendants were quashed by the circuit court of Cook county, and the judgments of the circuit court were affirmed by the Appellate Court.

The question presented in this form of action is, whether the inferior tribunal whose record is brought before the court had jurisdiction, or exceeded its jurisdiction, or proceeded contrary to law. An inspection of the records in these cases shows the railroad and warehouse commission in each case entertained and heard, against the objection of the defendant, a complaint by John C. Ross and John Hill, Jr., committee, charging such defendant, as owner of a warehouse of class A, with violating the laws of the State of Illinois concerning the business of public warehousemen, by directly or indirectly buying, selling, owning and dealing in grain stored in such warehouse and mixing such grain with the grain of other persons stored by defendant in such warehouse. The complaint in each case prayed that the warehouse license issued to defendant should be revoked and canceled, and upon hearing it was ordered that such license should be so revoked and canceled, and that the secretary of the commission should notify the clerk of the circuit court of Cook county, which granted the license, of such revocation and cancellation.

The assumed right of the railroad and warehouse commission to hear and determine the complaints and revoke the licenses is based on the provisions of the act creating the commission, approved April 13, 1871, in force July 1, 1871, entitled "An act to establish a board of railroad

and warehouse commissioners, and prescribe their powers and duties." Section 12 of that act reads as follows: "Said commissioners are hereby authorized to hear and determine all applications for the cancellation of warehouse licenses in this State which may be issued in pursuance of any laws of this State, and for that purpose to make and adopt such rules and regulations concerning such hearing and determination as may, from time to time, by them be deemed proper. And if, upon such hearing, it shall appear that any public warehouseman has been guilty of violating any law of this State concerning the business of public warehousemen, said commissioners may cancel and revoke the license of said public warehouseman, and immediately notify the officer who issued such license of such revocation and cancellation; and no person whose license as a public warehouseman shall be canceled or revoked shall be entitled to another license, or to carry on the business in this State of such public warehouseman, until the expiration of six months from the date of such revocation and cancellation, and until he shall have again been licensed: *Provided*, that this section shall not be so construed as to prevent any such warehouseman from delivering any grain on hand at the time of such revocation or cancellation of his said license. And all licenses issued in violation of the provisions of this section shall be deemed null and void."

When this act was approved there was not, and never had been, any statute providing for issuing licenses to warehousemen, and there was therefore nothing upon which section 12 could operate or of which the commission could take jurisdiction under its authority. Afterward, on April 25, 1871, during the same session of the legislature, an act was approved which also went into force July 1, 1871, entitled "An act to regulate public warehouses and the warehousing and inspection of grain, and to give effect to article 13 of the constitution of this

State." By this act public warehouses, as defined in the constitution, were divided into three classes, to be designated as classes A, B and C, respectively, and the different classes were particularly defined. No provision was made for issuing licenses to warehousemen of class B or C, but the proprietor, lessee or manager of each warehouse of class A was required to procure a license from the circuit court of the county in which the warehouse was situated, and to give a bond, approved by the court, for the faithful performance of his duty as a public warehouseman. A penalty was imposed for transacting business without first procuring a license or after the license had been revoked. Section 3 provided for issuing and revoking the license, as follows: "The proprietor, lessee or manager of any public warehouse of class A shall be required, before transacting any business in such warehouse, to procure from the circuit court of the county in which such warehouse is situated, a license permitting such proprietor, lessee or manager to transact business as a public warehouseman under the laws of this State, which license shall be issued by the clerk of said court upon a written application, which shall set forth the location and name of such warehouse and the individual name of each person interested as owner or principal in the management of the same, or, if the warehouse be owned or managed by a corporation, the names of the president, secretary and treasurer of such corporation shall be stated; and the said license shall give authority to carry on and conduct the business of a public warehouse of class A in accordance with the laws of this State, and shall be revocable by the said court upon a summary proceeding before the court, upon complaint of any person in writing, setting forth the particular violation of law, and upon satisfactory proof, to be taken in such manner as may be directed by the court."

Warehouses of class A are located in cities of not less than 100,000 inhabitants, and involve immense and valu-

able interests. By this second act the legislature took up and acted upon the subject of granting and revoking licenses to warehousemen of that class, but have never yet provided for issuing licenses for warehouses of class B or C. When they so took up and perfected a scheme for the granting and revocation of licenses for this particular class, it had already been provided by the prior act that the commission might revoke licenses generally, and there was no need of the provision for revocation by the court unless it was intended to make a particular provision for that class and take them out of the general provision. The two acts went into operation at the same time, but the second act, which was approved and became a law on April 25, 1871, was the enactment of a new rule, which must prevail if it is clear that it was intended to supplant the former act as to revoking this particular class of licenses.

It is alleged that the legislative records show that the later act passed the House before the earlier one. If that fact is of any importance the record in this case does not show it, and we will not take judicial notice of the manner in which the acts went through the legislature. (*Illinois Central Railroad Co.* v. *Wren,* 43 Ill. 77; *Grob* v. *Cushman,* 45 id. 119.) And we understand counsel to concede that if the two acts cannot stand together the later one repeals the earlier. The law does not favor a repeal by implication. (*Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 Ill. 638; *Hyde Park* v. *Cemetery Ass.* 119 id. 141; *Bruce* v. *Schuyler,* 4 Gilm. 221.) But if both cannot be the law at the same time, a repeal follows necessarily as much as if there are express words of repeal. So, also, if it is clear that the legislature intended the particular provision as an exception to the general power conferred by the prior act, the legislative will should be given effect accordingly.

In considering these questions it is to be borne in mind that the two acts were under consideration and ap-

proved by the same legislative body, in which a sudden change of intent in regard to the same subject should not be readily presumed. But while acts of the same legislature are ordinarily to be construed as intended to form one law, this is a minor rule of construction, and if the intention of the legislature is clear it must be given effect. *Gauen* v. *Drainage District*, 131 Ill. 446.

With reference to the particular class regulated by the second act, it was first provided that the circuit court might issue the license upon a written application therefor. Ordinarily the power to revoke or cancel a license is vested in the same authority which grants it. In accordance with this ordinary rule and practice it was then provided that the license so issued might be revoked by such court upon complaint in writing setting forth the particular violation of law complained of, and upon satisfactory proof, to be taken as directed by the court. By such a proceeding the rights of warehousemen of great importance to them would be carefully guarded and protected. The body upon which power had been conferred by the prior act to revoke licenses generally was unlearned in the law and making its own rules of procedure.

It is contended that between these two acts there is no repugnancy, but that it was intended that the court and commission should have concurrent jurisdiction as different courts may have. We do not think that conferring jurisdiction upon a court and a non-judicial body is at all similar to the concurrent jurisdiction of courts, or that such an intention is to be presumed unless it clearly appears. There are plain inconsistencies in the two acts and in the proceedings authorized by them. In the first act it is provided that no person whose license shall be canceled or revoked by the commission shall be entitled to another license until after the expiration of six months, while the second provides that the court, after revocation, may refuse a new license for one year. This second act clearly fixes the time when a new license may be is-

sued to warehousemen of class A, and permits the court, in its discretion, to grant or refuse a new license for the period of one year. If it had been intended that the warehouse commission might revoke licenses to warehousemen of that class, such revocation would be followed by an absolute disability for six months, and the legislature would have limited the discretion of the court to the remaining six months of the year.

We think that the jurisdiction of the circuit court as to this particular class was intended to be exclusive, and that the judgments of the Appellate and circuit courts are right. They will accordingly be affirmed.

*Judgment affirmed.*