396    APPELLATE COURTS OF ILLINOIS.

Coambs v. Central Health & Acc. Securities Co., 207 Ill. App. 396.

## Joseph B. Coambs et al., Appellees, v. Central Health & Accident Securities Company et al., Appellants.

### Gen. No. 22,591.

1. CANCELLATION OF INSTRUMENTS, § 35*—*when evidence in action to cancel notes for corporate stock and borrowed money shows fraud.* On a bill to rescind notes given partly for the purchase of corporate stock in an insurance company and partly for money borrowed and a trust deed given as security, evidence *held* sufficient to show fraudulent representations as to the character and financial condition of the insurance company.

2. JUDGMENT, § 473*—*when decree of foreign court vesting title to notes for stock and trust deeds in superintendent of insurance is not binding in prior undecided suit.* A decree in a suit in a foreign court vesting the title to notes and trust deeds given to an insurance company and trustee respectively, for the purchase price of corporate stock and for a loan, in the foreign superintendent of insurance, cannot affect the rights of the purchasers of such stock in a prior undecided suit to rescind their contract, where they were not parties to the suit in the foreign court, and the domestic court has jurisdiction of all the parties.

3. BILLS AND NOTES, § 102*—*what are not negotiable instruments.* Mortgages and trust deeds are not negotiable instruments.

4. INSURANCE, § 26*—*when company must deposit required amount of notes and bonds with State superintendent of insurance for security of policyholders.* An insurance company organized under section 700, art. VI, ch. 119, Rev. St. 1899 of Missouri, and for the purposes enumerated in section 6995 of writing health and accident insurance, must comply with section 6922 of chapter 61, providing that no existing company organized under any general or special law of the State and transacting business of the character designated in section 6895, accident insurance, and no organized company shall commence, continue or carry on business until the sum of $100,000 in notes or bonds have been deposited with the superintendent of the insurance department for the security of its policyholders.

5. INSURANCE, § 26*—*what are rights of State superintendent of insurance as to secured notes or bonds deposited for benefit of policyholders.* Under section 6922 of chapter 61 of the statutes of the State of Missouri, relating to the filing of notes or bonds to a specific value secured by mortgages or trust deeds with the State superin-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Chicago—First District—October, 1917.    397

Coambs v. Central Health & Acc. Securities Co., 207 Ill. App. 396.

tendent of insurance for the benefit of policyholders, the rights of the superintendent are superior to those of the makers of notes and trust deeds so deposited, to the extent that there is proof of the existence of such policyholders having liens and the amounts thereof.

6. INSURANCE, § 26*—*when burden is on State superintendent of insurance to show existence of bona fide policyholders having liens on deposited securities.* In a suit by the purchasers of stock in an insurance company to rescind such contract, including notes and trust deeds given in pursuance thereof, and in which the State superintendent of a foreign State was a party, claiming right to the notes and trust deeds for the benefit of policyholders, *held* that the burden rested upon such superintendent to show the existence of bona fide policyholders having liens.

7. INSURANCE, § 26*—*when exclusion of evidence of knowledge of receiver of insurance company of existing policy claims is immaterial.* In a suit by the purchaser of stock in an insurance company to rescind such contract, including notes and trust deeds given in pursuance thereof, and in which the State superintendent of a foreign State was a party, *held* that the exclusion of evidence that the receiver had knowledge of existing, valid, unpaid policy claims outstanding, of a certain amount, was immaterial where, under the decree under which the contract was rescinded, the superintendent acquired more than sufficient property to pay all outstanding indebtedness to policyholders, the liability to whom he sought to prove.

8. INSURANCE, § 26*—*when decree of foreclosure in favor of State superintendent is improper.* A decree in favor of a foreign State superintendent of insurance for the foreclosure of trust deeds, filed with such superintendent for the benefit of policyholders, is improper unless it is shown that some specific amount is due, or may become due on account of such policyholders and that such amount is a claim against the special deposit.

9. APPEAL AND ERROR, § 1214*—*when error affecting nonappealing codefendant may not be urged.* Defendants cannot assign error in their behalf because of errors affecting a nonappealing codefendant.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1916. Affirmed. Opinion filed October 9, 1917.

L. A. STEBBINS, for appellants.

HELMER, MOULTON, WHITMAN & WHITMAN, for appellees.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by the Central Health & Accident Securities Company, Walter K. Chorn, as superintendent of the insurance department in the State of Missouri, and George E. Dickson, individually and as trustee, to reverse a decree of the Circuit Court of Cook county.

Said decree found that two certain notes executed by appellees Joseph B. Coambs, Fred. Coambs and Arthur D. Coambs on the 9th day of June, 1913, payable to their own order and by them indorsed, in the sums of $25,000 and $35,000, respectively, together with two trust deeds of the same date conveying certain real estate in Bureau county, Illinois, to appellant George E. Dickson, as trustee, for the purpose of securing said notes, had been obtained by false representations of certain defendants, and decreed that the transaction in which said notes and trust deeds were executed and delivered should be rescinded.

It further directed the payment and delivery to the superintendent of insurance of the State of Missouri of the consideration for which said notes and trust deeds were executed.

The transaction originated in the desire of Joseph B. Coambs to obtain a loan for $20,000 upon the security of the lands conveyed, which were the inheritance of the three appellees from their grandfather.

The Royal Casualty Company, a casualty insurance company incorporated under the laws of the State of Missouri and controlled by appellant Dickson, was a defendant in the original suit, and pending the litigation in the Circuit Court of Cook county it was dissolved by decree of the Circuit Court of St. Louis, Missouri, and the entire assets of said Royal Casualty Company by the decree of the Missouri court passed to and vested in the said superintendent of insurance.

The Royal Casualty Company, however, is not a party to this appeal.

Appellant Central Health & Accident Securities Company, a corporation, which Dickson caused to be incorporated under the laws of the State of South Dakota, was by its charter stated to be formed for the purpose of buying and selling securities of all kinds. Its articles as amended increased its capital stock to $3,000,000, divided into 100,000 shares preferred and 200,000 shares common stock.

The Royal and the Securities Companies were both controlled by appellant Dickson at the time of the alleged false representations.

Appellant Dickson claimed to have formulated a plan of insurance which is referred to in the record as "commissary insurance" or "commissary plan of insurance," it being an adaptation of the trading stamp idea to accident insurance. The Securities Company was claimed by its promoters to be organized for the purpose of raising money to develop this insurance plan.

At the time of the transaction with Coambs, the Royal had an office in the Insurance Exchange Building in Chicago and Dickson was president and chief executive officer of the company, and one Woodward was its secretary. Dickson and Woodward were also president and secretary respectively of the Securities Company. The consideration which Coambs received for the execution of the two notes and trust deeds was $20,000 in cash by way of a loan, less one year's interest on the full sum of $60,000 at six per cent. represented by the two notes, making a net amount of cash received by Coambs in the transaction of $16,400, and preferred and common stock of the Securities Company of the par value of $40,000 each.

The bill of complaint charges that the fraudulent representations were made by defendants as to the

character and financial condition of the Securities Company; its ownership of the Royal Company and this commissary plan of insurance; that appellees relying thereon were induced to execute and deliver the notes and trust deeds in question.

The principal defenses relied on by appellants were the denial of the fraudulent representations, laches and estoppel, while the insurance superintendent of the State of Missouri also claims to be a holder of the notes and securities in due course; claims that the Negotiable Instrument Act of 1907 (J. & A. ¶ 7640 et seq.) has changed the rule in Illinois as to the nonnegotiable character of mortgages and trust deeds; denies the jurisdiction of the Circuit Court of Cook county to decree the relief, and claims that appellees are concluded by the decree of the Circuit Court of St. Louis entered pending this litigation, vesting the notes and trust deeds in the insurance superintendent.

With the other appellants he also urges that the Royal Casualty Company having passed out of existence, it was error for the trial court to enter a decree against it.

Appellants below made a motion requesting the chancellor to make specific findings of fact, which the chancellor declined to do. The review of this record would have been much less burdensome for this court had that request been complied with.

Upon the main controversy between appellants Dickson and the Securities Company, counsel on both sides have at great length pointed out the evidence upon which they respectively rely, and after careful consideration of the evidence we are of the opinion that the charges of fraud upon appellees whereby they parted with said notes were fully substantiated and warranted the decree entered by the chancellor against appellants, except said superintendent of insurance, whose defense rested on a different basis, and is hereafter considered.

The defenses of estoppel and laches set up by appellants Dickson and the Securities Company were not established.

Nor do we think that the decree of the Circuit Court of St. Louis vesting the title to these notes and trust deeds in said superintendent of insurance gives him better title as against appellees than he had without it.

The bill in this cause was filed August 17, 1914. The Missouri suit was filed April 13, 1915, and the decree entered therein November 5th, of the same year. The Missouri decree, entered upon proceedings to which appellees were not parties, could not affect the rights of appellees in a prior suit brought in Illinois in which the court had acquired jurisdiction of all the parties.

Nor is there merit to the contention of the insurance superintendent that the Circuit Court of Cook county did not have jurisdiction in view of the fact that by permission, if not direct order, of the Missouri court, the superintendent of insurance intervened in this suit, filed a cross-bill which he afterwards dismissed, and contested upon the merits.

Nor are we impressed with the contention that the Negotiable Instrument Act of 1907 (J. & A. ¶ 7640 et seq.) has changed the law of Illinois as to the non-negotiable character of mortgages and trust deeds as set forth in *Olds v. Cummings,* 31 Ill. 188, and subsequent cases. We find no language in the Negotiable Instrument Act which can be so construed, but we do not deem it necessary to decide that question.

The notes and trust deeds in question were deposited with the superintendent of insurance of Missouri by the defendant, Royal Casualty Company. Coambs knew at the time he executed and delivered them that they were to be deposited either in Missouri or Illinois and at the time, or shortly after the deposit, had knowledge of the fact. Neither at the time of the

transfer, nor before the filing of this bill in Illinois, did the superintendent of insurance or his deputy have any knowledge, information or suspicion of any infirmity or defect either in the notes or trust deeds, or that any fraud had been used in obtaining them.

It is conceded that had they had any such notice or suspicion, the insurance superintendent of Missouri would have refused to relicense the Royal in 1914. After such deposit the Royal was relicensed and other securities of the Royal held by the department released.

The Royal's application for deposit was as follows: "The superintendent of the insurance department of the State of Missouri is hereby requested by the Royal Casualty Company to receive the following described securities which are herewith presented and legally transferred to said superintendent to be held by him in trust for the purposes specified by chapter 61 of the Revised Statutes of Missouri 1909."

Chapter 61 of the Missouri statutes deals with the subject of insurance.

Appellees contend that this deposit of securities was neither authorized nor required by the laws of Missouri and that the insurance superintendent of that State was, therefore, a mere volunteer or a naked bailee, and that since he assumed to act without authority of law or contract, he is not in a position to invoke the rights of any of the policyholders in, or creditors of, the Royal Casualty Company.

We do not think, however, that this contention of appellees can be sustained.

Section 6922 of chapter 61 of the laws of Missouri which are in evidence provides:

"No existing company organized under any general or special law of this State, and transacting business of the character designated in section 6895, nor any company organized under this article, shall commence, continue or carry on business until such company has

transferred to and deposited with the superintendent of the insurance department, *for the security of its policy holders,* the sum of one hundred thousand dollars in notes or bonds secured by mortgages or deeds of trust of the description mentioned in section 6920 * * * ."

It is conceded that the Royal was not organized under the provisions of the article of which this section is a part, but *section 6895* of the same chapter provides as follows:

"Any number of persons, not less than thirteen, may associate and form a company for the purpose of making assurance upon the lives of individuals, and every assurance pertaining thereto or contested therewith, and to grant, purchase and dispose of annuities and endowments of every kind and description whatsoever, *and to provide an indemnity against death, and for weekly or other periodic indemnity for disability occasioned by accident to the person of the insured; but such accident insurance shall be made a separate department of the business of the life insurance company undertaking it.*"

The Royal Casualty Company was organized pursuant to the provisions of section 7000 of article VI, chapter 119, Revised Statutes Mo. 1899, and for purposes enumerated in section 6995 of that article, to wit, *"to make insurance upon the health of individuals and against personal injury, disablement or death resulting from traveling, or general accident by land or water."*

The character of the two sections does not, therefore, differ materially, both being descriptive of *accident insurance,* and we think it only reasonable to hold that the provisions of section 6922, which require a deposit from all companies organized *under any general or special law* for the transaction of business of the character designated in section 6895, authorized and required a deposit from the Royal before it should begin doing business.

Such has been the construction placed upon the law by the superintendent of insurance of the State of Missouri and all parties dealing with it, and we think that that is the true meaning and intent of this section.

Appellants argue that as the deposit was required by the law of Missouri the superintendent of insurance is a holder of the notes in question in due course and for value.

By the terms of the Missouri statute under which the deposit was made, it is plainly stated that it shall be *"for the security of its policy holders"* and we think it must be conceded that whether as a holder of the notes in due course, or by reason of estoppel, the rights of the superintendent are superior to those of appellees to the extent that there is proof of the existence of such policyholders having liens and the amounts thereof.

Policies issued by the Royal Company were to run for a period of one year or less, and while they contained provisions for renewal, the renewals were optional with the company. There is no evidence that any policy of the Royal was so renewed.

Its last license from the State of Missouri expired about February 1, 1915, and it would necessarily follow that the policies issued by the Royal, while it was authorized to issue policies (namely up to February 1, 1915), expired by lapse of time on or before February 1, 1916, almost four months prior to the entering of the decree here appealed from. More than one year before that time all of its policies were reinsured.

Presumably through these reinsurance contracts the Royal was relieved of all liability, and the fact that no policyholder has intervened in this suit strongly indicates that there is no such outstanding liability.

We think it was for the superintendent to show the existence of bona fide policyholders having liens, if any such there were.

Evidently realizing this necessity he, on May 23, 1916, prior to the entry of the decree, asked leave of court among other things to prove that the receiver had knowledge of existing valid unpaid policy claims outstanding on the policies theretofore issued by the Royal Casualty Company "aggregating about $14,000." The court denied permission so to do.

Aside from objections made to the form of the offer, we think that it became wholly immaterial by reason of the fact that under the provisions of the decree which was entered, and by reason of the rescission of the original transaction, the superintendent of insurance acquired from appellees, with other property, the sum of $17,569.87 in cash, which would more than pay all outstanding liabilities on policies of the Royal Company which the superintendent offered to prove.

In *Falkenbach v. Patterson*, 43 Ohio 359, an action was brought by the receiver of a life insurance company organized under the laws of Ohio to foreclose notes and a mortgage which had been deposited with the superintendent of insurance of that State, under a statute with a provision similar to the one at bar.

The Supreme Court, reversing a decree of foreclosure entered below and while holding that the makers of the notes and mortgages were estopped as to the policyholders of the company, says:

"But what, if anything, is due in this case to policyholders? There is no finding or evidence in the record from which we can ascertain any specific sum. The court finds 'that the liabilities of said company to policyholders *and* general creditors amount to $35,000, or more;' and in the record of the original case the plaintiffs, on May 25, 1876, 'express the hope and belief that in a short time *every policy* outstanding against the company, and which shall not have lapsed by reason of the nonpayment of assessments and premiums, will be canceled and taken up.'

"It may be that no policyholder has a claim secured by these deposits. Before these mortgages can be

foreclosed there must be shown some specific amount due, or that may become due, on account of such policyholders, and that such amount is a claim against this special deposit."

The law as here announced applies, in our opinion, to the case at bar.

As to alleged errors affecting the Royal Casualty Company, it has not appealed and appellants cannot assign error in its behalf. *Norris v. Downing,* 196 Ill. 91.

The decree of the trial court will be affirmed.

*Affirmed.*