Olds *v.* Cummings et al.

# JUSTIN H. OLDS

## *v.*

# PRESTON CUMMINGS *et al.*

1.  ASSIGNMENT—*choses in action—mortgages.*  By the common law, *choses in action* were not assignable.

2.  Our statute makes certain *choses in action* assignable, as promissory notes; but a mortgage given to secure such notes, is not assignable, either by the common law, or under the statute.

3.  ASSIGNMENT OF THE DEBT, *carries the mortgage—but only in equity.*  The assignment of promissory notes which are secured by mortgage, carries with it the mortgage, which is but an incident to the principal debt; but this is true only in equity.

4.  ASSIGNEE OF A MORTGAGE—*his remedy.*  The assignee of a mortgage has no remedy upon it at law, except it be treated as an absolute conveyance, and the mortgagee convey the premises to the assignee by deed; and whether this can be done, the authorities are not agreed.

5.  FORECLOSURE BY SCIRE FACIAS—*right confined to mortgagee.*  Our statute authorizing foreclosure of mortgages by *scire facias*, has confined the right to the mortgagee, and does not give this remedy to an assignee.

6.  PARTIES IN CHANCERY.  Courts of equity are not confined to legal forms and legal titles, but look beyond these, to the substantial, equitable rights of parties; and will allow those who have equitable rights, to enforce them in their own names, without regard to legal titles.

7.  So the assignee of a judgment may enforce it in equity, in his own name.

8.  ASSIGNEE OF LEGAL AND EQUITABLE RIGHTS—*how far protected in each.*  But while equitable rights may be thus enforced, it will be done with a scrupulous regard to the equitable rights of others.

9.  Thus, if the assignee of a judgment, attempt to enforce it in equity, without regard to the amount he may have paid for it, or his ignorance of its having been paid, or of any other reason why it should not be collected, the court of equity will look into all the circumstances, and will not enforce it in his favor, if it should not have been enforced, in the hands of his assignor.

10.  He who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all the infirmities to which it would have been liable in the hands of the assignor.

11.  A promissory note, though secured by mortgage, is still commercial paper, assignable at law; and when the remedy is sought upon that, all the rights incident to commercial paper, will be enforced in the courts of law; but when resort is had to a court of equity to foreclose the mortgage, that court

31   188
121   375
123   93
21a   36
22a   267
25a   126
31   188
124   41
31   188
28a   44
31   188
33a   164
31   188
133   35
133   204
135   669
31   188
35a   96
31   188
38a   335
31   188
141   260
31   188
147   301
31   188
160   202
31   188
65a   98
66a   424
31   188
166   496
67a   76
31   188
169   272
169   276
170   368
31   188
78a   186
31   188
179   605
82a   451
31   188
84a   556
31   188
d183   94
184   41
86a   348
88a   14
31   188
186   11329
186   11331
89a   11143
31   188
95a   9298
31   188
f191   3252
191   8254
96a   3114
98a   10201
98a   12202
98a   4203
98a   9204
98a   11205   31   188
98a   12206   194   10210
98a   4406   100a   3227

Olds *v.* Cummings et al.

will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself—and this, regardless of the fact that the assignee may have purchased the notes in good faith, and before their maturity.

12. But, notwithstanding the rule that the assignee in such case, will be subject to any equitable defense which could have been made available against his assignor, it must be understood, it seems, as being limited to such defenses as exist in favor of the original obligor; for the assignee would be protected against the latent equities of third persons, of whose rights he could have had no notice.

| | |
|---|---|
| 31 | 188 |
| 99a$^{10}$ | 620 |
| 31 | 188 |
| 198 $^{12}$ | 387 |
| 31 | 188 |
| 104a$^{11}$ | 240 |
| 31 | 188 |
| 205 $^9$ | 63 |
| 108a $^9$ | 223 |
| 108a $^9$ | 225 |
| 31 | 188 |
| 113a $^3$ | 60 |

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. M. E. HOLLISTER, Judge, presiding.

This was a bill in chancery exhibited in the Circuit Court, by Justin H. Olds against Preston Cummings, Cynthia Cummings, his wife, and others, asking the foreclosure of a mortgage.

It appears that on the 21st of November, 1857, Preston Cummings executed, to the order of Charles L. Kelsey, his two certain promissory notes, both payable some months thereafter.

On the same day on which the notes were executed, Preston Cummings, with his wife, Cynthia Cummings, to secure the payment of these notes, executed and delivered to Kelsey, a mortgage upon real estate.

The notes were assigned to Olds, the complainant, by Kelsey, the payee, as the bill alleges, *before their maturity.*

Olds, the assignee, sought by this bill, to foreclose the mortgage mentioned.

Cummings, in his answer, admits the execution of the notes and mortgage described in the bill; but interposes the defense of usury. It is also alleged in the answer, that the assignment of the notes by Kelsey to Olds, was made, (if at all) long *after* their maturity; but that, in fact, the matter of the assignment was only colorable, not made *bona fide*, for a valuable consideration, and only to prevent the defendants setting up the defense before mentioned.

The record contains voluminous proofs upon these contested questions of fact; but it is not important to consider the

evidence, as the point determined arises out of the facts as insisted upon by the complainant himself.

The Circuit Court held that the equity of the case was with the defendant, Preston Cummings, and that there was usury in the notes sued upon, *of which usury the complainant had notice*, and that he was not entitled to recover the same, but only the principal and interest in the notes, after deducting the usury which they contained: and a decree was rendered accordingly.

Olds, the complainant below, then sued out this writ of error, and questions the correctness of that decree, because, among other grounds, the Circuit Court sustained the defense of usury as against him.

Mr. MILTON T. PETERS, for the plaintiff in error.

Messrs. KENDALL & IDE, for the defendants in error.

Mr. CHIEF JUSTICE CATON delivered the opinion of the Court.

We do not find it necessary to determine the question whether Olds was a *bona fide* purchaser of this mortgage or not. In a case submitted subsequent to this one, we have been called upon to examine the question as to how far the rights of the assignee of a mortgage, purchased for a valuable consideration, before due, and in ignorance of any equities or defense, shall be affected by such defense; and, as this record also presents the question, and as the conclusion at which we have arrived, decides the case, we shall here consider this question and none other.

By the common law, *choses in action* were not assignable. For the convenience of commerce, by the statute of Anne, in England, certain *choses in action* were made assignable, so as to vest in the assignee the legal title, as promissory notes and bills of exchange. We have a statute, also, making certain *choses in action* assignable, prescribing a particular mode in which they shall be assigned. Our

statute provides, that any promissory note, bond, bill, or other instrument in writing, whereby one person promises to pay to another any sum of money, or article of personal property, or sum of money in personal property, shall be assignable *by indorsement thereon.* Now, the mortgage to foreclose which this bill was filed, was given to secure the payment of two promissory notes which were assigned by the payee and mortgagee to the complainants. This was, in equity, an assignment of the mortgage. The notes were assignable by the statute, but the mortgage is not, nor is it assignable by the common law. The assignee of a mortgage has no remedy upon it by law, except it be treated as an absolute conveyance, and the mortgagee convey the premises to the assignee by deed; and upon the question whether this can be done, the authorities are conflicting. Even our statute, authorizing foreclosures of mortgages by *scire facias,* has carefully confined the right to the mortgagee, and does not authorize this to be done by assignees. But it is said that the assignment of the notes carries with it the mortgage, which is but an incident to the principal debt. That is true, in equity, and only in equity. Courts of equity will not be confined to legal forms and legal titles, but look beyond these, to the substantial, equitable rights of parties, and allow parties who have equitable rights, to enforce those rights in their own names, without regard to legal titles. The assignee of a judgment, even, may, in his own name, enforce it in equity. But while courts of equity thus enforce equitable rights, they do it with a scrupulous regard to the equitable rights of others. Thus, if the assignee of a judgment attempt to enforce it in equity, no matter how much he paid for it, or how ignorant he might have been that it had been paid, or that there was other reason why it should not be collected, the court of equity will look into all the circumstances, and will not enforce it in his favor, if it ought not to be enforced in the hands of the assignor. He who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all infirmities to which it is liable in

the hands of the assignor ; and the reason is, that equity will not lend itself to deprive a party of a right which the law has secured him, if such right is intrinsically just of itself.

We have not met with a single case, where remedy has been sought in a court of chancery, upon a mortgage, by an assignee, in which every defense has not been allowed which the mortgagor or his representatives could have made against the mortgagee himself, unless there has been an express statute, authorizing the assignment of the mortgage itself. There are many cases in which the assignees have been protected against latent equities of third persons, whose rights, or even names, do not appear on the face of the mortgage. And the reason is, that it is the duty of the purchaser of a mortgage to inquire of the mortgagor if there be any reason why it should not be paid ; but he should not be required to inquire of the whole world, to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage, as, for instance, a *cestui que trust.*

We shall refer to a few of the many cases to be met with on this subject. In *Murry* v. *Sylburn*, 2 J. C. R. 441, the question arose upon a bill to foreclose a mortgage by the assignee, and Chancellor Kent said : " It is a general and well-settled principle, that the assignee of a *chose in action* takes it subject to the same equities it was subject to in the hands of the assignor. But this rule is generally understood to mean, the equity residing in the original obligor, and not an equity residing in some third person, against the assignor." And for this distinction he assigns the reason above stated. Again, he says, in the same case : " But bonds and mortgages are not the subjects of ordinary commerce." Here is expressed the very essence of the reason of the law. Mortgages are not commercial paper. It is not convenient to pass them, from hand to hand, performing the real office of money in commercial transactions, as notes, bills and the like. When one takes an obligation secured by a mortgage, relying upon the mortgage as the security, he must do it deliberately, and take time to inquire if any reason exists why it should not be enforced ; while he may take the mere promise to pay the

money as commercial paper, and depend upon the personal security of the parties to it. It may be said to be a distinguishing characteristic of commercial paper, that it relies upon personal security, and is based upon personal credit. It is a part of the credit system, which is said to be the life of commerce, which requires commercial instruments to pass rapidly from hand to hand. Mortgage securities are too cumbersome to answer these ends. The note itself, though secured by a mortgage, is still commercial paper; and when the remedy is sought upon that, all the rights incident to commercial paper will be enforced in the courts of law. But when the remedy is sought through the medium of the mortgage; when that is the foundation of the suit, and the note is merely used as an incident, to ascertain the amount due on the mortgage, then the courts of equity, to which resort is had, must pause, and look deeper into the transaction, and see if there be any equitable reason why it should not be enforced. He who holds a note, and also a mortgage, holds in fact two instruments for the security of the debt; first, the note with its personal security, which is commercial paper, and, as such, may be enforced in the courts of law, with all the rights incident to such paper; and the other, the mortgage, with security on land, which may be enforced in the courts of equity, and is subject to the equities existing between the parties. The right of an assignee to set at defiance a defense which could be made against the assignor, is an arbitrary statutory right, created for the convenience of commerce alone, and must rely upon the statute for its support; and is not fostered and encouraged by courts of equity.

In *Westfall* v. *Jones*, 23 Barb. 10, the court said: "Does the plaintiff, being a *bona fide* purchaser and assignee of the bond and mortgage, stand in any better condition than the person from whom he derived his title? It is a well-settled principle, that the assignee of a *chose in action*, takes it subject to all the equities which existed against it in the hands of the assignor." In this case, the defense to the foreclosure was, that the mortgage was given without consideration, and to defraud creditors, and the court refused to

enforce it, but left the assignee, as it would have left the mortgagee, where their contract left them. The case thus decides that the term *equities*, as here used, means *defenses*. The opinion of the court proceeds: "But I am prepared to hold that the plaintiff has no other or greater rights in relation to this bond and mortgage, and stands in no better position, than Parsons, the mortgagee."

So, in Pennsylvania the same rule was held. In *Mott* v. *Clark*, 9 State R. 399, the court said: "He (the assignee) takes it (the mortgage) subject to all the equities of the mortgagor, but not to the latent equities of a third person;" holding the same rule precisely as the case first referred to, as decided by Chancellor KENT; and such also was the case of *Prior* v. *Wood*, 31 Pa. State R., where the court protected the assignee of the mortgagee against the latent equities of third persons against the assignor. And this is as far as any court has gone in the protection of a *bona fide* assignee of a mortgage, when the proceeding was on the mortgage itself, and in the absence of any express statutory provision authorizing the assignment of the mortgage.

We find the law to be, both upon principle and authority, that the assignee of the mortgage in this case, took it subject to the defense which the mortgagor had against it in the hands of the assignor. Of the sufficiency of that defense, to the extent admitted by the Circuit Court, no question was made.

The decree must be affirmed.

*Decree affirmed.*