EMILIE WILHELMINE PEACOCK *et al. vs.* LILLIE M. PHILLIPS *et al.*—(J. ARNOLD SCUDDER, Appellant, *vs.* EDWIN F. MASTERSON, Appellee.)

*Opinion filed December 21, 1910.*

1. BAILMENTS—*one holding tangible personal property as pledge may sell the same.* A creditor holding goods, chattels or other tangible personal property as a pledge to secure the indebtedness to him may sell the same and apply the proceeds to the payment of the debt, accounting to the debtor for any surplus, since from the nature of the property the only method of applying it to the payment of the debt is through a sale.

2. SAME—*pledgee of bonds, mortgages or notes cannot sell the same unless authorized by contract.* A creditor, in the absence of a contract, cannot sell commercial paper or choses in action held by him as collateral security, but he may collect the same and apply enough of the proceeds to pay his debt, returning any balance to the pledgor; and if there is a contract authorizing the pledgee to sell such collateral, the right to sell is conferred by the contract and not by the law, and must be exercised according to contract.

3. SAME—*rule where securities of a third person are deposited as collateral.* If the securities of a third person are deposited as collateral the creditor may collect the whole amount due from the maker and will hold any surplus above his own debt as trustee for his debtor, and in such case the maker of the securities is not concerned how the pledgor and pledgee may settle between themselves but is held for the full amount of his debt.

4. SAME—*if collateral consists of a mortgage the holder has a right to foreclose.* If the collateral security for a debt consists of a mortgage the pledgee has a right to foreclose, but he is not entitled to a decree for any more than is due him on the debt for which the mortgage is pledged, and he must account to the pledgor for any surplus.

5. SAME—*when pledgee of mortgage may either sell or fore-close.* Where collateral security consists of a mortgage and the pledgee has a contract authorizing him to sell the mortgage, the pledgee may either foreclose or sell, in case of non-payment of the indebtedness to him.

6. SAME—*effect of contract giving power to sell mortgage held as collateral.* A contract giving a pledgee the right to sell a mortgage held as collateral does not enable the pledgee to confer upon a purchaser, who has full notice of all the facts and of the extent to which the pledgee may enforce the mortgage, any greater rights than the pledgee would have had if he foreclosed the mortgage.

7. MORTGAGES—*purchaser of mortgage takes subject to mortgagor's equities and defenses.* While the assignment of a note secured by mortgage carries with it the mortgage as an incident of the debt it does so only in equity, and when resort is had to equity to enforce the obligation any defense good against the mortgage in the hands of the mortgagee himself is available, except defenses based upon latent equities of third persons of whose rights the purchaser had no notice.

8. SAME—*mortgage gives notice, on its face, that mortgagor is the debtor.* A mortgage gives notice, on its face, that the mortgagor is the debtor, and if a purchaser of the mortgage fails to obtain actual notice of any equities or defenses of such debtor it is due to his own neglect and he is chargeable with notice thereof; but the purchaser is not bound to inquire of third persons whether they have any equities, and is presumed to take without notice of such equities and free from them.

9. SAME—*exception to rule that mortgage, in equity, is subject to defenses good against it in hands of mortgagee.* The rule that one seeking to enforce a mortgage security in equity is subject to any defenses which would have been good against the mortgage in the hands of the mortgagee does not apply to corporate bonds which are issued for the purpose of raising funds for the corporation and are intended to be thrown on the market and to pass from hand to hand.

10. SAME—*when collateral is not mere accommodation paper.* A note made by a person to his own order and endorsed in blank and delivered, together with a mortgage to secure its payment, as collateral security for another note of smaller amount, is not mere accommodation paper, which is made without legal consideration and which would fail of its only purpose if the assignee thereof could not recover on it discharged of all defenses which might have existed against the accommodated party.

11. SAME—*when purchaser of mortgage is not entitled to fore-closure decree for full amount.* Where a note, secured by mort-

gage, made payable to the maker's order and endorsed in blank is delivered, with the mortgage, to a bank as collateral security for a note of the same maker for a smaller amount, and the bank is authorized, by contract, to sell the collateral on non-payment of the principal note, if a person having full knowledge of the facts purchases the collateral at the amount due on the principal note, which is then canceled by the bank and returned to the maker, he is not entitled, on foreclosure, to a decree for more than he paid to the bank, together with interest and solicitor's fees agreed upon.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

MATZ, FISHER & BOYDEN, (LAIRD BELL, of counsel,) for appellant.

E. F. MASTERSON, and E. F. DUNNE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Emilie Wilhelmine Peacock, who was the owner of a promissory note for $15,000 secured by a trust deed on premises known as 151 Astor street, in Chicago, and the trustee in the said trust deed, filed their bill in the circuit court of Cook county to foreclose the same. The appellant, J. Arnold Scudder, filed his cross-bill in the case to foreclose a trust deed which was a second lien on the premises, and was made to secure the payment of a note for $4000 which he had purchased from the Chicago Savings Bank and Trust Company and which was held by the bank as collateral security for a note of $2500. The appellee, Edwin F. Masterson, had purchased the premises, and he and his wife by their answer disputed the right of the appellant to a foreclosure for the full amount of the trust deed, and insisted that it was a lien upon the premises only to the amount of the note for which it was collateral, which amount they were ready and willing to pay. The appellant

had paid for the note and trust deed on April 29, 1907, $2530.62, which was the amount due the bank, and appellee offered to pay that amount, with interest. The appellee paid the amount secured by the first trust deed and the original bill was dismissed without prejudice to the cross-bill. He also paid to appellant the amount which appellant had paid for the note and trust deed, together with interest covering the amount for which it had been held as collateral, and $200 solicitor's fees agreed upon by the parties. Appellee also deposited with the clerk of the court $1800 to be held pending the result of the suit, and the lien of the trust deed was transferred, by order of the court, from the land to the fund deposited. The issues were referred to a master in chancery, who reported that appellant was entitled to the full amount of the $4000 note, with interest. The chancellor overruled exceptions to the report and entered a decree for $1618 and interest from March 3, 1908, and ordered the clerk to pay that sum to the appellant out of the funds in his hands. The Branch Appellate Court for the First District reversed the decree and remanded the cause, with directions to order the payment of the amount deposited to the appellee and to dismiss the cross-bill of the appellant. The court then granted a certificate of importance and an appeal to this court.

The question to be decided is whether the appellant, who purchased the note of $4000, and the trust deed securing the same, with notice that they had been deposited for the payment of a note for $2500, was entitled to a decree for the full amount of the note and trust deed purchased, or was only entitled to the amount due the bank and secured by the note and trust deed, which was paid to him, together with solicitor's fees.

The material facts were agreed upon before the master, as follows: Lillie M. Phillips, who was the owner of the mortgaged premises, made her promissory note on November 27, 1906, for $2500 to the Chicago Savings Bank and

Trust Company, and at the same time she and her husband executed their note for $4000, payable to their own order and endorsed in blank, together with a trust deed to secure its payment. The $4000 note and trust deed were delivered to the bank as collateral security for the $2500 note, which provided that upon default in payment the bank might sell the collateral pledged for such payment. Upon the maturity of the $2500 note, on January 26, 1907, a new note for the same amount, payable thirty days after date, with interest at seven per cent, and with the same provisions as to the collateral, was given and the same collateral security was retained by the bank. The $2500 note was not paid, and on April 29, 1907, the bank sold the collateral security for the amount due it, to the appellant. The amount due was $2530.62, and appellant knew all the circumstances of the pledge. The bank canceled the $2500 note and returned it to Mrs. Phillips. Six weeks after the sale of the collateral to appellant Mrs. Phillips and her husband conveyed the premises to the appellee, who was informed of the note and trust deed pledged as collateral security with the bank and that the bank had authority to sell the note and trust deed on default of payment of the $2500 note, but he did not know that the sale had already been made.

A creditor holding goods, chattels or tangible personal property as a pledge to secure the payment of the indebtedness to him may sell the same and apply the proceeds to the payment of his debt, accounting to his debtor for any surplus. (22 Am. & Eng. Ency. of Law,—2d ed.—882.) From the nature of the property the only method of applying it to payment of the debt is through a sale, but it is not so with bonds, mortgages or promissory notes, which are available for the payment of the principal debt by collecting them and applying the proceeds. (*Joliet Iron and Steel Co.* v. *Scioto Fire Brick Co.* 82 Ill. 548; *Union Trust Co.* v. *Rigdon,* 93 id. 458.) In *Jenkins* v. *International Bank,* 111 Ill. 462, where notes and a mortgage were

pledged to the bank, it was said that a creditor holding such securities has three remedies, and may file his bill to have the collaterals sold for the payment of the principal indebtedness, or may bring suit upon the collaterals themselves, or collect the same by a sale of property conveyed in trust to secure them. The creditor, in the absence of a power of sale given him by his debtor, cannot sell commercial paper or choses in action, but may collect the same and apply enough of the proceeds to pay his debt, and if there is any balance, must return it to the pledgor. (*Zimpleman* v. *Veeder,* 98 Ill. 613.) If the collateral security consists of a mortgage, the holder of it has a right to foreclose, (*Union Trust Co.* v. *Hasseltine,* [Mass.] 16 Ann. Cas. 123, note,) and in such case must account for any surplus above his debt. (31 Cyc. 888.) If the securities of a third person are deposited as collateral, the creditor may collect the whole amount due from the maker and will hold any surplus above his own debt as trustee for his debtor, and in such a case the maker of the securities is not concerned how the pledgor and pledgee should settle between themselves but is held for the full amount of his debt. (*Tooke* v. *Newman,* 75 Ill. 215.) In this case there was a contract authorizing the bank to sell the $4000 note and trust deed at public or private sale without advertising the same or demanding payment or giving notice, and with the right of the bank to purchase at the sale if made at any broker's board or any public sale. Where there is a contract for such a sale of securities on default in payment of the debt secured, the right to sell is conferred, not by the law but by the contract, and is to be exercised according to the contract. (*McDowell* v. *Chicago Steel Works,* 124 Ill. 491.) The bank, therefore, might have foreclosed the trust deed pledged for the payment of its note of $2500 and could not have had a decree for any more than the amount due on such note, or it could elect to sell the collateral in accordance with the power given by the contract. In case of

foreclosure the equities between the parties would have forbidden an enforcement of the lien for more than the debt to the bank, and the question is whether that result could be accomplished by selling the note and trust deed, in pursuance of the agreement, to one who had notice of the facts.

A trust deed or mortgage is not assignable either by the common law or under the statute, and while the assignment of a promissory note secured by mortgage carries with it the mortgage as an incident of the debt, it does so only in equity. When resort is had to a court of equity to enforce the obligation created by the mortgage it will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself, excepting only defenses based on latent equities of third persons of whose rights the assignee had no notice. (*Olds* v. *Cummings,* 31 Ill. 188; *Silverman* v. *Bullock,* 98 id. 11; *Mullanphy Savings Bank* v. *Schott,* 135 id. 655; *Himrod* v. *Gilman,* 147 id. 293; *Buehler* v. *McCormick,* 169 id. 269.) A mortgage gives notice, on its face, that the mortgagor is the debtor, and if the assignee fails to obtain actual notice of any equities or defenses of such debtor it is due to his own neglect. (20 Am. & Eng. Ency. of Law,—2d ed.—1041.) The assignee is not bound to inquire of third persons whether they have any equities, and is presumed to take without notice of any such equities and free from them. The equities here involved existed between the bank and the makers of the note and trust deed and were not latent. There can be no room for doubt that in case of an ordinary sale by the bank of such securities they would be subject to such equities in the hands of the assignee, and the argument that they are not is based on the fact that there was a contract giving the bank a power of sale. As we have seen, the bank could not sell at all without a power so conferred, and the purpose of the contract was merely to enable the bank to do an act to obtain payment which could not otherwise be done. We do not see any good reason

for saying that a mere grant of power to sell enabled the bank to confer a greater right upon the purchaser, with full notice of the facts and circumstances and the extent to which the bank could enforce the obligation, than the bank would have had in case of foreclosure.

Counsel for appellant regard the collateral as answering the same purpose as accommodation paper, but there is no similarity between the two. Accommodation paper is made without legal consideration, and would fail of its only purpose if the assignee could not recover on it discharged of all defenses that might have existed against the accommodated party. (*Miller* v. *Larned,* 103 Ill. 562; *Naef* v. *Potter,* 226 id. 628.) There is an exception to the doctrine that one seeking to enforce in equity a mortgage security is subject to any defense which would have been good against the mortgage in the hands of the mortgagee. That is the case of corporation bonds, and the appellant relies upon a decision relating to collateral of that kind. (*Morris Canal and Bank Co.* v. *Fisher,* 9 N. J. Eq. 667.) Bonds of that kind are issued for the purpose of raising funds for the corporation and are intended to be thrown upon the market and to pass from hand to hand. The mortgage or trust deed secures the holders of the bonds, and they can be enforced by such holders for the full face value, regardless of equities. To permit equitable defenses to be interposed would practically destroy such methods of raising money, and the corporation is properly estopped to deny its liability. (*Peoria and Springfield Railroad Co.* v. *Thompson,* 103 Ill. 187.) The case of *Trust Estate of Weeks & Co.* 52 Md. 520, related to notes deposited as collateral security and no question concerning choses in action not assignable was involved. No well considered case has been cited expressing a view contrary to the settled law in this jurisdiction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*