Lawrence A. Smith, Appellee, v. Mary Pearce Niemann and Walter F. Niemann, Appellants.

Gen. No. 25,232.

1. MORTGAGES, § 175*—*what defenses available against assignee of debt secured by deed of trust.* On a suit in equity by the assignee of a debt secured by deed of trust to foreclose the trust deed, all the defenses which could have been interposed against the assignor are equally admissible against the assignee, even though the good faith of the latter's title is not questioned.

2. MORTGAGES, § 1*—*mortgage as incident to principal debt.* The mortgage by which a note is secured is, in a court of equity, but an incident to the principal debt.

3. MORTGAGES, § 155*—*mortgage as not assignable.* A mortgage is not assignable by the course of the common law nor under the Illinois statutes.

4. MORTGAGES, § 409*—*when misrepresentations and frauds are defense to foreclosure by assignee of debt.* On a proceeding by the assignee of a debt secured by a trust deed to foreclose the trust deed, where it appears that such trust deed was given in connection with an exchange of property between defendant and complainant's assignor, misrepresentations and frauds by such assignor or his agent, of which he knew, set up in the bill, as to the rentals for which his property was leased, deposits by the tenants to secure the performance of their leases, the net income which the property would produce, the value of the building and the manner of its construction, are available as defenses to the bill to foreclose.

5. FRAUD, § 15*—*how false representation may be made.* A false representation need not necessarily be an oral, written or printed statement, but may arise from any conduct capable of being turned into a statement of fact.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. FRAUD, § 36*—*negligence as not defense to liability for fraud.* Negligence cannot be imputed to a defrauded person, so that he who commits the fraud may escape liability.

7. MORTGAGES, § 393*—*when foreclosure suit is prematurely brought.* Where one seeking to foreclose a trust deed for nonpayment of an instalment of interest, under an acceleration clause giving him that right, concedes that there is due defendant for a breach of the contract, in the performance of which the deed was given, a sum exceeding the amount of such instalment of interest, the suit is prematurely brought.

8. APPEAL AND ERROR, § 365*—*when statute cannot be urged in Appellate Court.* An appellant who failed to urge a statute in the trial court should not be permitted to do so in the Appellate Court.

9. STATUTES, § 274*—*how Illinois statutes passed since 1874 must be proven.* There having been no revision of the Illinois statutes since 1874, all statutes passed since that time must be proven by the Session Laws certified by the Secretary of State, or by copies thereof certified by the same official.

10. STATUTES, § 274*—*what evidence is not conclusive that act is part of laws of State.* While the fact that an act is included in the Session Laws is prima facie evidence that it is a part of the laws of the State, such evidence is not conclusive.

11. MORTGAGES, § 175*—*nonexistence of statute relating to defenses.* Laws 1901, p. 248 (J. & A. ¶ 7589), providing as to the defenses to mortgages and deeds of trust, assumed to have been concluded by the Supreme Court not to have been passed by a constitutional majority and to be nonexistent.

Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in this court at the March term, 1919. Reversed and remanded with directions. Opinion filed December 8, 1919. Rehearing denied December 22, 1919.

THOMPSON, TYRRELL & CHAMBERS, for appellants.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a decree in a bill filed to foreclose a trust deed given by defendants to secure notes aggregating $7,500, with interest. The trust deed pro-

vided that on failure to pay interest when due, such default of interest payment continuing for 30 days, the whole amount of the indebtedness might at the option of the legal holder thereof be declared due and payable and payment enforced by foreclosure or otherwise. At the time complainant, as legal holder of the indebtedness, exercised his option to declare the whole of the indebtedness due and payable and for that purpose filed the bill in the record, there was due and unpaid interest amounting to the sum of $115.11.

The inception of the transaction which eventuated in the giving of the trust deed sought to be foreclosed was a contract of exchange of some North Dakota lands owned by the defendant, Mary Pearce Niemann, for an apartment building in Chicago owned by one Fred Becklenberg; the contract was between these two persons. The contract was completed by the conveyance to Becklenberg of the North Dakota land and by the conveyance to Mary Pearce Niemann of the apartment house property described in the trust deed in suit.

The answer of defendants denies the indebtedness and avers that the real owner of the notes constituting such indebtedness was Fred Becklenberg, and denies that complainant was authorized to declare the whole amount due at or previous to the filing of the bill. Said answer also avers *inter alia* that the execution of the principal and interest notes and coupons and the trust deed securing them was obtained by fraud in that Becklenberg represented in the exchange contract that the total rent of the mortgaged premises aggregated $11,820 a year; that Becklenberg exhibited to defendant, Mary Pearce Niemann, leases of 24 apartments which showed an aggregate annual rental of $11,820, while in truth and in fact such leases had been falsely drawn; that Becklenberg in devious ways arranged with the tenants named in the leases that they should not pay the rentals provided for in the leases, but a lesser amount, and that to accomplish such results receipts were in several instances given to the tenants

at the time of the execution of the leases reciting the receipt by Becklenberg of a large portion of the rent reserved in the leases; that some of the leases provided that the lessees had deposited with Becklenberg certain sums of money as security for the faithful performance of the leases, when in fact the money so receipted as having been received from tenants was not in fact received, and the money mentioned as having been deposited as security for the performance of the leases was not so deposited, but represented the amount of rebates which the tenants were to receive from the amount reserved in the leases; that previous to the execution of the contract of exchange and the notes and trust deed in suit, Becklenberg by his representatives advised defendant, Mary Pearce Niemann, that the building and the various apartments therein were in fact rented for the amounts specified in the leases and that the tenants were paying such amounts; that these representations were false and untrue and were known by Becklenberg and his representatives to be false and untrue, and that they were made for the purpose of inducing defendants to convey the North Dakota land to Becklenberg and to execute the notes and trust deed set out in the bill; that false representations were also made regarding the manner of the construction of the building and its value and the net income which it would produce; that such representations were false; that the contract of exchange provided that Becklenberg should, after the delivery of the deed, make certain repairs and alterations in the premises, including the covering of all steam pipes with asbestos, and that Becklenberg would "refinish all the inside wood trim of said building, including the sideboards, and would give the same the necessary refinishing"; that these things he did not do and that it cost defendants $5,000 to complete said work; that the difference between the value of the premises and property on the date of its conveyance to Mary Pearce Niemann, as well as on the date of the contract, and its value if it

Smith v. Niemann et al., 216 Ill. App. 179.

had been of the rental value and of the construction, material and workmanship as represented, was greatly in excess of the amount of the notes secured by the trust deed and of any sums that accrued or might be due complainant thereunder.

The cause was referred to a master, who took the proofs at some length, including all the defenses set up in the answer, but ignored all but one of such defenses and found that the amount due complainant on the indebtedness secured by the trust deed was $7,891.43, and allowed solicitors' fees of $1,500, of which complainant voluntarily remitted $500. The master's costs were taxed at $836.10 in the decree entered confirming the master's report.

Defendants preserved their rights by the usual objections before the master and exceptions before the chancellor.

The only finding in favor of the defendants by the master was: "That Becklenberg failed to comply with the terms and provisions of the contract in so far as the specific provision for the refinishing of the woodwork and sideboards, and failed to furnish asbestos covering for the pipes in the basement. The cost of completing the contract in that respect would be $500, which amount is recommended to be allowed Mrs. Niemann in reduction of the indebtedness due the complainant as found by the report."

We shall confine this opinion to the discussion and determination of four points:

1. Is complainant, as assignee and innocent holder of the notes included in the indebtedness secured by the trust deed in suit, immune from the defenses set out in the answer, were such defenses admissible against his assignor, Becklenberg?

2. Are the misrepresentations and frauds set out in the answer available to defendants as a defense?

3. Was the bill prematurely brought for the reason that defendants were entitled to credit for the $500 found due by the master for certain breaches of the

contract between Becklenberg and Mrs. Niemann, while at the time complainant elected to declare the notes due there was but $115.11 of interest unpaid?

4. Is the act found in the Session Laws of 1901, p. 248 (J. & A. ¶ 7589), entitled "An Act making mortgages, trust deeds and other conveyances in the nature of mortgages, negotiable instruments, subject only to the same defenses as other negotiable instruments," a subsisting statute available to complainant in warding off the defenses of fraud and misrepresentation set up in the answer?

1. As early as *Olds v. Cummings*, 31 Ill. 188, and in a long line of decisions uniformly adhering to the doctrine there announced, it is laid down as the law that a promissory note though secured by a mortgage is still commercial paper assignable at law; that when the remedy is sought upon it all the rights incident to commercial paper will be enforced in the courts of law; but when resort is had to a court of equity to foreclose the mortgage, that court will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself; and this regardless of the fact that the assignee may have purchased the notes in good faith and before maturity.

Complainant is of his own choice in a court of equity seeking to foreclose the trust deed, which is in law a mortgage on realty, and he is therefore bound by equitable rules applicable to the condition in which, according to the averments in his own bill, we find him. Therefore, all the defenses which could have been interposed against Becklenberg are equally admissible against complainant, his assignee, and even though the good faith of his title may not be questioned, this in no way affects the right to interpose defenses which would be pertinent as against Becklenberg.

In equity the mortgage securing notes is but an incident to the principal debt in a court of equity, and that is upon the theory that by the common law a mortgage is a chose in action and not assignable. Nor is a

mortgage assignable by the course of the common law or under our statutes, although the mortgage follows the notes which it secures as an incident to the principal debt.

In *Bartholf v. Bensley,* 234 Ill. 336, the court said:

"This court held in *Olds v. Cummings,* 31 Ill. 188, that mortgages and trust deeds not being assignable at law, the assignee takes them subject to the same defenses that existed between the original parties.    In that case it was said (p. 191): 'He who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all infirmities to which it is liable in the hands of the assignor; and the reason is, that equity will not lend itself to deprive a party of a right which the law has secured him, if such right is intrinsically just in itself.' "    *Buehler v. McCormick,* 169 Ill. 269.

The court further said of the *Olds* case:

"The law as announced in *Olds v. Cummings, supra,* has been adhered to and applied in every subsequent case which has come before this court where the same questions were involved, and there is nothing shown by the evidence in this case that could take it out of the operation of or make inapplicable the law announced in *Olds v. Cummings,* and subsequent cases."

We therefore hold that all the defenses which could be interposed against Becklenberg, complainant's assignor, are equally potent as defenses against complainant. *Zollman v. Jackson Trust & Savings Bank,* 238 Ill. 290.

2.    The misrepresentations and frauds, set forth in the answer, perpetrated upon defendants by Becklenberg, or through his agents or those representing him, of which he was cognizant and had notice, are available to defendants as a defense to complainant's bill.

A false representation need not necessarily be an oral, printed or written statement, but may arise from any conduct capable of being turned into a statement of fact; and negligence cannot be imputed to a defrauded party, so that he who commits the fraud may

escape liability. As Becklenberg was cognizant of what was being done regarding the transactions with defendants and the frauds perpetrated inured to his financial advantage, the law will fasten such frauds upon him as his own. *Leonard v. Springer*, 197 Ill. 532.

3. When complainant conceded that $500 found by the master as due for the breach of the contract with Becklenberg was correct and lawfully due defendants, he in so conceding presumptively admitted that that sum should be allowed as a credit upon the indebtedness of defendants secured by the trust deed. It therefore follows, as complainant elected to declare the whole amount due when there was only $115.11 of interest due and unpaid, that instead of defendants being indebted to complainant, complainant was debtor to defendants, and consequently it could not be truthfully said that defendants were in default; and as said in *Bartholf v. Bensley, supra*: "If appellee was not in default in the payment of interest then appellant's bill was prematurely filed, and the Appellate Court properly reversed the decree of the Circuit Court and directed the dismissal of the bill."

4. In this court complainant for the first time invokes an act found in Session Laws of 1901, p. 248 (J. & A. ¶ 7589), as legislation repealing the doctrine above stated in *Olds v. Cummings, supra*. This so-called act was not brought before nor considered by the master or the chancellor, nor was any reference made thereto until complainant filed his brief in this court.

While we think that complainant is barred from urging the act *supra* in this court for the first time, still every decision of every court is made with the statutes of the State in mind, of which the courts take judicial notice. If the facts of any case fall within the statutory enactments, the court will interpret the statute and apply it to the case as the law. For-

eign statutes to be availed of must be pleaded, but domestic statutes are, inferentially at least, within the mind of the court. There has been no revision of our statutes since the revision of 1874; consequently all statutes passed since that time must be proven by the Session Laws certified by the Secretary of State, or by copies thereof certified by the same official.

According to the Session Laws, *supra*, the act is prima facie a part of the statute law of the State, although such prima facie evidence thereof is not conclusive. As laid down in *State v. McBride*, 4 Mo. 303, the Supreme Court may look into the proceedings of the legislature to see that all the constitutional requirements have been complied with and that the act has been adopted by proper majorities.

In *Spangler v. Jacoby*, 14 Ill. 297, it was held that the printed statute book is not conclusive, but may be corrected by the original act on file in the office of the Secretary of State, and that such may be shown from the journals of either branch of the legislature; that a particular act was not passed in the mode prescribed by the constitution, and that if contest arises as to the passage of an act, the journals may be appealed to, to settle it; and while the signatures of the speakers and the governor to an act create the presumption that it became a law in pursuance of the constitution, this presumption may be overthrown by a reference to the journals.

In *Prescott v. Board of Trustees of I. & M. Canal*, 19 Ill. 324, it was held that the Supreme Court will look behind the printed statute to the journals to ascertain whether it has a legal existence.

In *Illinois Cent. R. Co. v. Wren*, 43 Ill. 77, the doctrine of *Spangler v. Jacoby, supra*, was affirmed, but it was held that in attacking the validity of an act the evidence of the fact must be brought into the record in the way usual in the trial court. To like effect is *Grob v. Cushman*, 45 Ill. 119.

Since 1901, when the act *supra* is said to have been wrought into the statutes of the State, the Supreme Court has uniformly (whenever the question was involved regarding a holder for value of notes secured by mortgage or trust deed, having taken the same subject to all equitable defenses invocable in a court of equity) followed *Olds v. Cummings, supra,* and a long line of cases holding that such notes were in equity subject to all the defenses which could be equitably interposed against the original owner.

As late as February, 1909, in, *Zollman v. Jackson Trust & Savings Bank,* 238 Ill. 290, and in December, 1910, in *Peacock v. Phillips,* 247 Ill. 467, the Supreme Court cited and followed *Olds v. Cummings, supra,* and kindred cases.

Counsel for defendants in their reply brief, which was not challenged by counsel for complainant when the case was orally argued before us, state that an examination of the briefs and abstracts filed in the Supreme Court in *Bartholf v. Bensley, supra,* shows that the journals of the House of Representatives were introduced in evidence before the master, and that such journals showed that the act in question was defeated by a vote of 90 to 22, and that the invalidity of the statute was also argued at length in the brief of appellee.

While the subject of the existence or nonexistence of this 1901 act is not alluded to in the opinion in *Bartholf v. Bensley, supra,* we will assume that the court reached the conclusion from the evidence of the journals of the House of Representatives in that record that the act was not passed by a constitutional majority and was therefore *nonexistent,* and placed its decision, as it did, upon the doctrine of the *Olds* case, *supra,* uniformly followed wherever the question there decided was subsequently before the court.

For the foregoing reasons the decree of the Circuit Court is reversed and the cause is remanded with

directions to that court to enter an order dismissing the bill for want of equity.

*Reversed and remanded with directions.*