CHICAGO—FIRST DISTRICT—APRIL, 1920.     75

Utpatel et al. v. Chicago Title & Trust Co., 218 Ill. App. 75.

## Henry Utpatel and Richard C. Mauer, Appellants, v. Chicago Title & Trust Company et al., Appellees.

### Gen. No. 24,884.

1. MORTGAGES, § 175*—*what is effect of common law as to assignment of mortgage.* The common-law rule that the assignee of a mortgage or trust deed takes it subject to all equities existing against the security in the hands of the mortgagee is the law of Illinois.

2. APPEAL AND ERROR, § 384*—*necessity of objections in court below. Semble* that an appellant cannot urge in the Appellate Court that a statute not mentioned by him in the trial court is fatal to his adversary's contentions.

3. EVIDENCE, § 5*—*what court will take judicial notice of.* The courts take judicial notice of all of the statutes of the State and render their decisions with such statutes in mind and will interpret and apply them to the facts of any case falling within them, whether or not the parties raise the question of the applicability of the statute.

4. STATUTES, § 274*—*what statutes must be proved.* All statutes in Illinois enacted since 1874, the date of the last revision, must be proven by the Session Laws certified by the Secretary of State or by copies thereof certified by the same officer.

5. STATUTES, § 274*—*how statutes are proved.* While an act which is included in the Sesssion Laws is prima facie a part of the statute law of the State, such evidence is not conclusive.

6. STATUTES, § 275*—*when session law is not a part of law.* Session Laws 1901, p. 248 (J. & A. ¶ 7589) does not exist as a part of the laws of Illinois.

7. JUDGMENT, § 502*—*what matters are concluded by former verdict.* The verdict against defendant in an action at law brought against him on notes signed by him will not preclude him from setting up, on a bill to foreclose the trust deed given to secure such notes, the defense that the notes and trust deed were secured from him by fraud and were without consideration.

8. MORTGAGES, § 405*—*when equities are with defendant in suit to foreclose.* On a bill to foreclose a trust deed given to secure notes, where it appears that the execution of the deed by defendant was obtained without his knowledge and by gross fraud which was not discovered by him until some months thereafter and the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

76 APPELLATE COURTS OF ILLINOIS.

Utpatel et al. v. Chicago Title & Trust Co., 218 Ill. App. 75.

notes of defendant which it purported to secure were made on the representation of a real estate agent that they would enable the intending purchaser of the defendant's property to complete the purchase of the property and that the agent sold such notes and trust deed to complainants, it was *held* that the equities were with defendant.

9. MORTGAGES, § 176*—*what is duty of assignee of mortgage when purchasing.* It is the duty of one purchasing notes secured by a trust deed to inquire of the maker if any reason exists why the incumbrance should not be paid, and on buying without such inquiry, he assumes the risk of such equities as may be in existence between the maker and the one from whom the purchase is made.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed April 21, 1920.

ERNEST SAUNDERS and OTTO G. KNECHT, for appellants.

THURMAN, HUME & KENNEDY, for appellees.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

This is an appeal by complainants from a decree dismissing their bill to foreclose a trust deed, for want of equity, and allowing the prayer of a cross-bill which sought to have the deed set aside and canceled.

One of the defendants, whose name is Mengel, owned the property in which he and his family lived. He desired to sell it and one Werner, a real estate broker, produced a prospective buyer whose name was Grunder and ultimately the parties executed a contract of sale by the terms of which the latter agreed to pay $2,550 for the property. Some time later Werner went to Mengel and told him Grunder did not have cash enough on hand to complete the purchase

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and was obliged to borrow $1,200 so as to pay Mengel the full purchase price in cash and Werner suggested to Mengel that he (Mengel) execute notes to that amount so that Grunder could take them to the Chicago Title & Trust Company and get $1,200 from them on the notes and then be in a position to complete his purchase of Mengel's property by paying him the full amount in cash, called for by the contract. Mengel not only executed the notes but a trust deed conveying his property to the Chicago Title & Trust Company to secure the notes. Mengel was a foreigner and not very familiar with the English language. The decree entered in the trial court finds that he did not discover that one of the papers he had signed was a trust deed until 5 or 6 months later. Mengel received $100 as earnest money on his sale but nothing further developed, although he had turned his abstract of title and insurance policy over to Werner. Upon making some inquiries of Werner several months after the contract had been executed, Mengel was told that Grunder had found it impossible to raise even $1,350 whereupon the contract was canceled. Mengel then asked Werner to give him back "his papers." Werner put him off and Mengel went to a lawyer who investigated the situation and Mengel then learned for the first time that he had executed a trust deed on his property. Not being able to secure the return of the trust deed or the notes, Mengel had Werner arrested. It appears from the record that at the time of the hearing in this case he had departed for parts unknown.

After getting possession of the trust deed and notes executed by Mengel, Werner, representing himself as the owner of the paper, sold it to these complainants for its face value less accrued interest and commissions. Default was made on the interest due on the notes, whereupon the complainants, Utpatel and Mauer, instituted these foreclosure proceedings and

78    APPELLATE COURTS OF ILLINOIS.

Utpatel et al. v. Chicago Title & Trust Co., 218 Ill. App. 75.

Mengel filed the cross-bill to which we have already referred. After filing the bill in the suit at bar complainants sued Mengel at law on the notes and recovered a judgment and set those facts up here by supplemental bill.

The common-law rule that the assignee of a mortgage or trust deed takes it subject to all equities existing against the security in the hands of the mortgagee, as laid down in *Olds v. Cummings,* 31 Ill. 188, and many subsequent cases, down through *McAuliffe v. Reuter,* 166 Ill. 491; *Buehler v. McCormick,* 169 Ill. 269; *Bouton v. Cameron,* 205 Ill. 50, and *Peacock v. Phillips,* 247 Ill. 467, is still the law of this State.

Complainants urge that the equitable defenses sought to be interposed in this foreclosure proceeding by Mengel are completely barred by a statute appearing in the Session Laws of 1901 at page 248, which provides that whenever a mortgage, trust deed or other such conveyance, is executed, conveying real estate for the purpose of securing an indebtedness on the real estate mentioned in said conveyance, the conveyance shall be considered as incident to the indebtedness secured thereby and shall be exempt from defenses to the same extent as the negotiable paper described in the conveyance, if held by a bona fide purchaser for value before the maturity of the indebtedness in question. We have not been favored by any comment on this contention in the brief filed by appellees. The contention cannot prevail. The record discloses that no point was made of this alleged statute in the trial court but it is mentioned in this case for the first time in the brief filed by complainants.

While we think complainant might be barred from urging the statute referred to in this court for the first time, still, as this court pointed out in a recent decision we shall refer to in a moment, all decisions are made with the statutes of the State in mind, of

which the courts take judicial notice. If the facts of any case fall within the statutory enactments, the court will interpret the statute and apply it to the case as the law. While foreign statutes, to be availed of, must be pleaded, domestic statutes are, at least, inferentially in the mind of the court. There has been no revision of our statutes since the revision of 1874, —consequently all statutes passed since that time must be proven by the Session Laws certified by the Secretary of State or by copies thereof certified by the same official. According to the Session Laws of 1901, the act in question is prima facie a part of the statute law of this State, although such prima facie evidence thereof is not conclusive. *Spangler v. Jacoby,* 14 Ill. 297; *Prescott v. Board of Trustees of Illinois & M. Canal,* 19 Ill. 323; *Illinois Cent. Co. v. Wren,* 43 Ill. 77; *Grob v. Cushman,* 45 Ill. 119.

While the act appears in the Session Laws of 1901 (J. & A. ¶ 7589), it has never been included in any of the editions of Hurd's Statutes. Preceding the act, as it appears in the edition of the Statutes by Jones & Addington, is a statement reading in part: "It is said upon good authority, and the records at Springfield seem to support the statement, that the above (entitled) Act was never passed by the House of Representatives." The same comment is made as to this act where it appears in 4 Starr & Curtis, p. 891. In the case of *Schott v. Horney,* 201 Ill. App. 10, this act was invoked and the question of its validity was raised in the case for the first time when the case reached the Appellate Court for the Third District, and the court reversed the decree which had defeated the foreclosure sought, on the equitable defenses interposed by defendants, and remanded the cause so that the question of the validity of the Act of 1901 referred to, could be tried out and determined. That case does not again appear in the published reports

of the Appellate Court nor in the reports of the Supreme Court since that time.

However, the question of the validity of the statute has been raised in our Supreme Court in the case of *Bartholf v. Bensley*, 234 Ill. 336, in which case, as well as a number of others, decided by the Supreme Court since 1901, including *Zollman v. Jackson Trust & Savings Bank*, 238 Ill. 290, and *Peacock v. Phillips*, 247 Ill. 467, the court followed the law as laid down in *Olds v. Cummings, supra*, and the long line of decisions following, holding that such paper as is involved here is, in equity, subject to all the defenses which could be equitably interposed against the original holder. In its opinion in *Bartholf v. Bensley, supra*, the Supreme Court makes no reference to the Act of 1901 and in *Schott v. Horney, supra*, the Appellate Court for the Third District concluded that the attention of the Supreme Court had not been called to the statute although the incumbrance sought to be foreclosed in that case was created after the passage of the act.

However, this act was again involved in the recent case of *Smith v. Niemann*, 216 Ill. App. 179, where it was pointed out that an examination of the briefs and abstracts filed in the Supreme Court in *Bartholf v. Bensley, supra*, showed that in that case this act was not only brought to the attention of the Supreme Court, but that the journals of the House of Representatives were introduced in evidence before the master, and that such journals showed that the act in question had been defeated in that body and the validity of the statute was argued at length in the briefs.

As pointed out in *Smith v. Niemann, supra:* "While the subject of the existence or nonexistence of this Act of 1901 is not alluded to in the opinion in *Bartholf v. Bensley, supra*, we will assume that the court reached the conclusion from the evidence of the journals of the House of Representatives in that record

that the act was &ast; &ast; &ast; nonexistent, and placed its decision, as it did, upon the doctrine of the *Olds* case, *supra,* uniformly followed wherever the question there decided was subsequently before the court.'' Following these decisions, we hold that the Act of 1901, invoked by complainants, does not exist as a part of the laws of Illinois.

In urging that the decree be reversed, complainants further contend that Mengel is estopped, by the verdict against him in the action at law on these notes, from setting up the defense that the notes and trust deed were procured from him by fraud and are without consideration. Of course this cannot be true for the equitable defenses available to Mengel in the suit at bar were not available to him in the action at law. The issues involved here are therefore broader than they were in the action at law. That being true, Mengel cannot be estopped by the verdict in that action, from setting up those equitable defenses here. The cases called to our attention by complainants in support of their contention are not at all in point. One of these cases is *Black v. Thomson,* 120 Ill. App. 424, in which the court holds that the findings of a decree in a foreclosure proceeding are *res adjudicata* in an action at law instituted upon the notes foreclosed where the parties are identical and no question of jurisdiction is raised. That is the reverse of the case at bar. In the case cited no defenses could be interposed in the action at law which were not available to the defendant in equity. The issues involved in the action at law were narrower than they were in the suit in equity. Whereas, in that situation, the defendant would be precluded by the decree in the equity suit from again setting up against his notes, in the action at law, the defenses which had been available to him in equity, it by no means follows that where a judgment at law precedes the decree in the equity suit, a judgment in the law action will preclude a de-

82      APPELLATE COURTS OF ILLINOIS.

Utpatel et al. v. Chicago Title & Trust Co., 218 Ill. App. 75.

fendant from setting up against the complainants in equity, those defenses available to him there and which he had not been able to interpose at law. Another case cited by complainants is *Fosdick v. Forbes,* 120 Ill. App. 226. In that case judgments were recovered by Forbes against Fosdick on certain judgment notes given by the latter in payment for a stallion. Fosdick thereupon conveyed certain real estate to his wife. Forbes alleged the conveyance was fraudulent and filed a bill in equity to set it aside. A conservator was appointed for Fosdick and he defended the suit in equity and filed a cross-bill praying that the judgments by confession, upon which the suit in equity was predicted, be set aside and that he be permitted to plead and defend in the suits at law. That is very different from the prayer of the cross-bill filed by Mengel here. The defenses sought to be set up under the cross-bill in the case cited were the legal defenses of breach of warranty and failure of consideration which had already been determined in the action at law, while the defense which Mengel seeks to avail himself of here is the equitable defense of fraud which he could in no way put in issue in the action at law.

Complainants also cite in this connection, *Chicago Title & Trust Co. v. Moody,* 233 Ill. 634, where the court applies the principles of estoppel by verdict to a situation where those principles are applicable. We hold that the situation presented by the facts involved in the case at bar is one where those principles cannot be applied.

Finally, complainants contend that the equities are with them; that the notes executed by Mengel were accommodation paper and thus within the rule laid down in *Miller v. Larned,* 103 Ill. 562; that Mengel possessed no equities at the time complainants bought the notes and trust deed in question but that his equities, if any, did not arise until his contract of sale

with Grunder was subsequently canceled and that Werner cannot be considered as an assignee of Mengel and assignor of these complainants but as the agent of Mengel, which the latter had clothed with apparent authority to dispose of the paper by placing it in his possession. Even if we could dignify the notes signed by Mengel with the term "accommodation paper," we are of the opinion that *Miller v. Larned* has no application to the facts involved here. The fallacy of all complainants' contentions, just referred to, lies in the fact that the execution of the trust deed here sought to be foreclosed by complainants was obtained by Werner by the grossest fraud. Mengel's testimony is to the effect that he did not discover that among the papers he signed at the time the notes were executed, there was included this trust deed, until some months later. The decree appealed from contains a finding to that effect. It is true that the master's report, at least constructively, makes a contrary finding to the effect that the evidence fails to support the allegations of Mengel's cross-bill. However, his evidence on this point is in no way contradicted in the record, except by the bare fact that he did execute a trust deed. But it is not hard to understand that one who would be so gullible as to comply with such a preposterous proposition as Werner made when he asked Mengel, the seller of the property, to sign notes for use by Grunder, the buyer, in raising the cash with which to pay the seller the purchase price of the property, could also be made to put his signature on a trust deed without knowing that the paper he was signing was a deed. Mengel testified that when he put his signature on the trust deed, it was not opened up but was folded together and in asking him to sign it Werner said something about the need of Mengel signing some paper to show that he was the owner of the property.

When the complainants purchased the notes secured

by the trust deed here sought to be foreclosed, it was their duty to inquire of Mengel if any reason existed why the incumbrance should not be paid. If they chose to buy the paper without making such inquiry, they assumed the risk of such equities as might be in existence between Mengel and Werner. As was said by our Supreme Court in *McAuliffe v. Reuter,* 166 Ill. 491, quoting from *Sumner v. Waugh,* 56 Ill. 531: "When a person buys that which is not assignable at law, relying upon a court of equity to enforce and protect his rights, he takes it subject to all the infirmities to which it would have been liable in the hands of the assignor," and further quoting from *Haskell v. Brown,* 65 Ill. 29, in such a case "a court of equity will let in any defense which would have been good against the mortgage in the hands of the mortgagee himself." The court also said, referring to *Shippen v. Whittier,* 117 Ill. 282, that the fact that the notes involved were payable to the order of the maker and indorsed by him and that the security was in the form of a trust deed is unimportant. Complainants strenuously argue that Werner was Mengel's agent. We think the point entirely without merit and moreover, in getting these papers from Mengel, if Werner was acting as the agent of any body, it was as agent of Grunder.

We find no error in the record and the decree of the superior court is, therefore, affirmed.

*Affirmed.*

MR. JUSTICES TAYLOR and O'CONNOR concur.